Filed 5/5/14; pub. order 5/27/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SYERS PROPERTIES III, INC., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> ANN RANKIN et al., <br><br>     Defendants and Respondents. | A137610 <br><br> (Alameda County <br> Super. Ct. No. RG10518323) |

INTRODUCTION

Plaintiff  Syers Properties III, Inc. challenges the trial court's award of attorney fees in its unsuccessful legal malpractice action against defendant attorneys Ann Rankin and Terry Wilkens and the Law Offices of Ann Rankin.  In a separate opinion, we have affirmed the judgment in that action. (*Syers Properties III, Inc. v. Rankin,* (May 5, 2014, A136018) [nonpub. opn.].)  The trial court awarded defendants attorney fees totaling $843,245.27, pursuant to Civil Code section 1717 and Code of Civil Procedure section 1033.5, subdivision (a)(10)(A), as prevailing parties.  Plaintiff contends the trial court abused its discretion in two respects in awarding the fees:  First, plaintiff maintains the court's determination of reasonable *hours* relied upon inadequate documentation that failed to show the reasonableness of the hours and the specific tasks performed by defense counsel.  Second, plaintiff asserts the court abused its discretion in calculating the reasonable *rate,* as it did not inquire into the actual hourly rate charged or whether that actual rate was reasonable under the lodestar formula.  We shall affirm the award.

1

BACKGROUND

Plaintiff sued defendants for legal malpractice and breach of fiduciary duty in defendants' representation of plaintiff in a construction defect case over the course of seven years. Following numerous hearings and motions in limine to resolve legal issues in the action, a jury was empanelled, opening statements were given and plaintiff's first witness was called. The court then granted defendants' pending nonsuit motion. Following the judgment in their favor, defendants sought their attorney fees as the prevailing parties in the malpractice action, pursuant to the attorney-client fee agreement with plaintiff and Civil Code section 1717. Defendants sought a total of $843,245.27 for the combined 2,324.5 hours of attorney and paralegal time spent on the case from its inception, through discovery, numerous pretrial motions, trial, and post-judgment work.

In support of the requested fee, the law firm Murphy, Pearson, Bradley & Feeney, which had represented defendants in the malpractice action, filed declarations from three attorneys who performed the majority of the work (1,949 total hours): named shareholder John H. Feeney and associates Adam M. Koss, and Arthur J. Harris. Each of the declarations set forth the attorney's qualifications and experience, described the stages or motions in the litigation in which he had been primarily engaged, and summarized his hours billed to defendants within several specific litigation categories, including the total hours spent in: "Fact investigation and general conferences and correspondence"; "Development of case analysis and strategy"; "Legal research"; "Expert and/or consultant work"; "Status reports to client and carrier"; "Draft pleadings and papers, and other case assessment and development"; "Settlement discussions and mediation"; "Written and document discovery"; "Party, percipient and expert depositions"; "Trial preparation and support, including witnesses and exhibit preparation and examinations"; "Trial motions and submissions"; "Court appearances, including trial"; and "Attorneys' fee motion." These totals were also submitted for each of the three primary attorneys in the form of time bar graphs for each category of work performed.

In addition, Feeney's declaration set forth the hours billed by associate attorney David J. Gibson, as well as by each of four paralegals who assisted on the case. This

2

declaration also described the qualifications and experience of Gibson and each of the paralegals, as well as a brief description of the work each performed.[1]

As to the "reasonable rate" of pay, Feeney stated in his declaration that based on his more than 20 years of civil litigation experience, it was his understanding that the prevailing rate or market rate in the San Francisco Bay Area for the services performed by associates Koss and Harris, who were admitted to the state a bar of California in December 2006, was approximately $300 per hour; for Gibson, who was admitted in December 2010, was approximately $250 per hour; and for paralegals Miranda, Tetlow, Hill and Ota was approximately $150 per hour.

Defendants also relied upon the *Laffey* Matrix, attached as exhibits to the motion. As described by defendants, the *Laffey* Matrix "is an official source of attorney rates based in the District of Columbia area, which can be adjusted to the San Francisco Bay Area by using the Locality Pay Tables." Application of the same formula used by Chief Judge Walker in *In re HPL Technologies, Inc. Securities Litigation* (N.D. Cal. 2005) 366 F. Supp.2d 912, 922, fn. 1 (*HPL Technologies*) provided an approximately 9 percent upward rate over rates in the District of Columbia. Feeney declared that the *Laffey* Matrix hourly rate, adjusted for the San Francisco Bay Area of $517.75 for an attorney with 20-plus years of experience, such as he, represented "a reasonable rate for competent trial counsel of his education and experience, as well as the complexity and specialization of these particular proceedings and the claims alleged therein." He further

---

[1]Feeney declared that attorney Gibson worked and billed 49.6 hours assisting in file and document management, including document discovery and trial preparation; certified paralegal Miranda worked and billed 200.4 hours performing tasks consisting of managing the document flow of the litigation, including the review, analysis and organization of documents and testimony and assisting in trial preparation; certified paralegal Tetlow worked and billed 15.4 hours performing tasks consisting of mainly support on the fee motion; certified paralegal Hill worked and billed 42.2 hours of trial support, including exhibit preparation and presentation and authorized paralegal Ota worked and billed 67.9 hours performing tasks consisting of managing the document flow of the litigation, including the review, analysis and organization of documents and testimony and assisting in trial preparation. ~(AF AA 14-15)~

3

opined that the *Laffey* Matrix hourly adjusted rate of $299.75 for attorneys Koss, Harris, and Gibson represented a reasonable rate for competent representation by attorneys of their education and experience, as well as the complexity of the particular proceedings.[2] So, too, did the *Laffey* Matrix hourly adjusted rate of $147.15 for the four paralegals working on the case represent a reasonable rate. Feeney further stated he had personally reviewed the attorney fee billings in the matter and that in finalizing the time entries he had from time to time eliminated time entries incurred because in his "billing judgment, the actual time expended was greater than it should have been or for other reasons."

Plaintiff opposed the fee motion on the grounds the amount sought was unreasonable. It contended the hourly rate requested was significantly higher than the rate actually billed the clients and that the lodestar formula applied had historically been reserved for contingency fee cases and not to a conventional hourly fee case such as the instant attorney malpractice case. Further, plaintiff argued that the declarations were inadequate to document the hours expended and that defendants failed to provide enough specificity about the fees incurred for the court to properly assess their reasonableness. Specifically, plaintiff claimed defense counsel had not disclosed their *actual* hourly rates and had not provided either redacted billing statements or a comparable itemized summary of the expenses incurred. Arguing that defense counsel marketed itself as a premiere insurance defense firm in areas of professional negligence, among others, plaintiff asserted that insurance defense firms usually charged insurance company clients hourly rates significantly below the prevailing market rate, permitting the firm to take on a huge case load of insurance defense work without the usual administrative overhead issues incurred with a more individual client practice. In short, plaintiff argued the rate sought was much higher than the "market rate for this type of work or law firm." Plaintiff maintained the court should rule defendants were entitled to a fee award based

---

[2]As to attorney Gibson, Feeney apparently misspoke in his declaration. The *Laffey* Matrix adjusted for the San Francisco Bay Area yielded an hourly rate calculation of $250.7 for attorney Gibson, who had less than three years in practice. The mistake had no impact as the fee sought was that using a $250 hourly rate (the adjusted *Laffey* Matrix rate) for Gibson.

4

on the fees actually incurred by them and should direct defendants to provide supplemental information with more detail, so plaintiff and defendants could review the billing records to determine whether the time spent was reasonable, necessary, and not duplicative.

At the hearing on defendants' fee motion, Feeney offered to submit defendants' bills to the court in camera, should the court wish to review them. The court did not request those bills. Feeney conceded that "[e]very insurance company in the United States that I know of paid below market to their litigation lawyers, but that's not the criteria. That's not the standard. The standard is a reasonable fee." The court observed that "the fee requested by the defendant in this case, the hourly rate, is not even close to the highest hourly rate that I have seen in this area. The cost of sophisticated legal work is high." The court stated it would look at the question of duplication and time spent "a little closer along with the notes [it had] been taking while you were discussing this matter."

On January 9, 2013, the court granted defendants' fee motion, finding that the rates and hours requested were reasonable and that the adjusted *Laffey* Matrix rates requested by defendants were reasonable and appropriate for the lodestar calculation. Accordingly, it awarded defendants the sum of $843,245.27 based on the hours and rates requested by defendants. This timely appeal followed.

DISCUSSION

## I.  The Law

The abuse of discretion standard governs our review of the trial court's determination of a reasonable attorney fee. (E.g., *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 (*PLCM Group*); accord *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 650 (*Nemecek*).)

"Under the lodestar method, attorney fees are calculated by first multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate of compensation. (See *Ketchum v. Moses, supra,* 24 Cal.4th at p. 1136; *Serrano v. Priest* (1977) 20 Cal.3d 25, 48, fn. 23, (*Serrano III* ); [citation].)"  (*Chacon v. Litke* (2010) 181

5

Cal.App.4th 1234, 1259, 1260 [This court held the lodestar method appropriate for calculating the fee award and we affirmed a fee award that exceeded the actual hourly rate under the fee agreement where the fee shifting ordinance at issue provided "[t]he prevailing party shall be entitled to reasonable attorney's fees and costs . . . ."].)

Our Supreme Court has recognized that the lodestar is the basic fee for comparable legal services in the community and that it may be adjusted by the court based on a number of factors in order "to fix a fee at the fair market value for the particular action.  In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." (*Ketchum v. Moses, supra*, 24 Cal.4th 1122, 1132.)  "The lodestar adjustment method . . . has also been widely applied by the Courts of Appeal under a broad range of statutes authorizing attorney fees. [Citations.] [¶] Indeed, . . . '[T]he Legislature appears to have endorsed the [lodestar adjustment] method of calculating fees, except in certain limited situations.' [Citation.]  When the Legislature has determined that the lodestar adjustment approach is not appropriate, it has expressly so stated." (*Ketchum v. Moses, supra,* 24 Cal.4th at pp. 1134–1135; accord *Chacon v. Litke, supra,* 181 Cal.App.4th at p. 1259.) *Ketchum v. Moses* "reaffirmed the primacy of the lodestar method for *all* fee-shifting statutes . . . ." (Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. Mar. 2014 update) § 8.4, p. 8-5, italics added (Pearl, California Attorney Fee Awards); see *Chacon v. Litke* at pp. 1259–1260.)  Here, as appropriate in this type of case, counsel were compensated based on the lodestar calculated by the court, without adjustment.

Finally, we recognize that, "[t]he ' "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' [Citation.] " (*Ketchum v. Moses, supra,* 24 Cal.4th at  p. 1132; *PLCM Group, supra,* 22 Cal.4th at p. 1096; accord *Chacon v. Litke, supra,* 181 Cal.App.4th at p. 1259.)

## II. Computation of Hours

The trial court did not abuse its discretion in accepting defense counsel's computation of attorney hours as hours reasonably spent working on the case. It is well established that "California courts do not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent. [Citations.]" (Pearl, Cal. Attorney Fee Awards, *supra,* § 9.83, p. 9-70, and authorities cited therein; see e.g., *Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375–1376 [declarations sufficient and detailed billing records not required][3]; *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 64 [same][4]; *Weber v. Langholz* (1995) 39

---

[3]In *Raining Data Corp. v. Barrenechea, supra,* 175 Cal.App.4th 1363, 1375–1376, appellant argued that counsel for respondent Raining Data had failed to meet its initial burden to establish the reasonableness of the fees incurred because it did not submit its attorneys' billing statements and that the declarations submitted by counsel did not provide any basis for determining how much time was spent by any one attorney on any particular claims. Rather, the declarations gave broad descriptions of the work provided by each attorney. Appellant argued the declarations were " 'devoid of any information to allow the trial court to determine whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.' " (*Id.* at p. 1375.) The Court of Appeal rejected the claim, stating: "The law is clear, however, that an award of attorney fees may be based on counsel's declarations, without production of detailed time records. [Citations.] Raining Data's attorneys provided declarations detailing their experience and expertise supporting their billing rates, and explained the work provided to Raining Data. [Appellant] did not offer any evidence to challenge any statement in Raining Data's counsel's declarations." (*Ibid.*) The appellate court also rejected the claim that the case was overstaffed with attorneys from two law firms on the basis that "[a]n 'assertion [that] is unaccompanied by any citation to the record or any explanation of which fees were unreasonable or duplicative' is insufficient to disturb the trial court's discretionary award of attorney fees. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1248.)" (*Id.* at pp. 1375–1376.)

[4]In *Chavez v. Netflix, Inc., supra,* 162 Cal.App.4th 43, attorneys provided declarations stating the total time spent by each of the firm's two partners prosecuting the litigation, but did not provide billing records showing the number of hours the partners spent on particular activities or days. Based on its knowledge of the litigation, the court made reductions in the hours claimed to reflect its estimate of time spent by both

Cal.App.4th 1578, 1587 [same][5]; *Trustees of Cent. States, Southeast & Southwest Areas Pension Fund v. Golden Nugget, Inc.* (C.D. Cal. 1988) 697 F.Supp. 1538, 1558–1559 [noting more lenient California rule on time records in setting fees under Civil Code section 1717].)

"Because time records are not required under California law . . . , there is no required level of detail that counsel must achieve. See, *e.g., PLCM Group* [*, supra,* 22 Cal.4th at p.] 1098 ('We do not want "a [trial] court, in setting an attorney's fee, [to] become enmeshed in a meticulous analysis of every detailed facet of the professional representation. It . . . is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps dwarfing the case in chief, " ' quoting *Serrano v*[.] *Unruh (Serrano IV)* (1982) 32 C[al.]3d 621, 642). See, e.g., . . . *Jaramillo v*[.] *County of Orange* (2011) 200 [Cal.App.]4th 811, 830 (noting that records included very general descriptions, *e.g.,* "trial prep," "T/C-Client"); *City of Colton v*[.] *Singletary* (2012) 206 [Cal.App.]4th 751, 784 (declaration stating time spent on various activities); [citation]." (Pearl, Cal. Attorney Fee Awards, *supra,* at § 9.84, p. 9-71.)

---

attorneys that could have been handled by one or by attorneys or paralegals with lesser expertise. (*Id*. at p. 64.) In affirming, the Court of Appeal reiterated the rule giving broad discretion to the experienced trial judge to value professional services, acknowledged that detailed time sheets were not required, and observed that a court may award fees based on time estimates for attorneys who do not keep time records. (*Ibid.*)

[5]In *Weber v. Langholtz, supra,* 39 Cal.App.4th 1578, the court's award of fees was upheld, despite the failure of counsel to state the total number of hours or to substantiate the hours with copies of time records or copies of billing statements. The appellate court concluded: "Counsel's declaration and verified cost memorandum were, however, made under penalty of perjury. Mathematical calculation could show the number of hours was between 90 and 103. The work done was described. The trial court could make its own evaluation of the reasonable worth of the work done in light of the nature of the case, and of the credibility of counsel's declaration unsubstantiated by time records and billing statements. Although a fee request ordinarily should be documented in great detail, it cannot be said in this particular case that the absence of time records and billing statements deprived the trial court of substantial evidence to support an award; we do not reweigh the evidence. [Citation.]" (*Id.* at p. 1587.)

The type of categorical breakout of time expended by each attorney and paralegal provided here has been specifically lauded by Hon. Vaughn Walker, former Chief Judge of the United States District Court for the Northern District of California, as "an especially helpful compromise between reporting hours in the aggregate (which is easy to review, but lacks informative detail) and generating a complete line-by-line billing report (which offers great detail, but tends to obscure the forest for the trees)." (*In Re HPL Technologies, supra,* 366 F.Supp.2d 912, 920.)

Finally, we observe that the three attorneys primarily involved in the litigation provided declarations under penalty of perjury in support of the hours sought, which were broken down by hours expended in each category of services rendered. Feeney also averred he had exercised his "billing judgment" to excise hours actually expended, but which he believed either exceeded the time required for the task or had other reasons to cut. Most importantly, the able trial judge presided over the entire matter and was well able to evaluate whether the time expended by counsel in this case, given its complexity and other factors, was reasonable. We find no abuse of discretion here.

### III.  Reasonable Rate

Plaintiff also challenges the rates applied by the trial court to the hours expended by defense attorneys. Plaintiff contends the trial court abused its discretion in adopting as "reasonable," rates far exceeding the *actual* rates billed the insurance company footing the bill for the defense. Plaintiff further maintains that the reasonable rate measured by the "market rate" for attorneys in insurance defense firms on cases such as this one was far below that determined by the court to be reasonable and, therefore, the court's reliance on the adjusted *Laffey* Matrix was misplaced.

"Generally, the courts will look to equally difficult or complex types of litigation to determine which market rates to apply. [Citations.]" (Pearl, Cal. Attorney Fee Awards, *supra,* § 9.109, p. 9-93.) "The determination of the 'market rate' is generally based on the rates prevalent in the community where the court is located." (*Id.,* § 9.114, p. 9-98) Plaintiff presented no evidence that the San Francisco Bay Area was not an

9

appropriate "community," where the court was located in Alameda and where counsel for both plaintiff and defendants were located in San Francisco.

There is no requirement that the reasonable market rate mirror the *actual* rate billed. As we stated in *Chacon v. Litke, supra,* 181 Cal.App.4th 1234: " 'The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel. [Citations.]' [Citation.]" (*Id.* at p. 1260; accord *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 619; see also *PLCM Group, supra,* 22 Cal.4th 1084, 1094 [Civil Code section 1717 permits an award of attorney fees for in-house counsel and the calculation was properly based upon the prevailing market rate in the community for comparable legal services].)

Plaintiff suggests this general rule allowing the "reasonable rate" to vary from the actual rate billed does not apply in cases, such as this, where there is neither a contingent risk regarding payment of the fees, nor other special circumstance. We disagree.

*Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, is on point. There, the Court of Appeal expressly rejected the argument that the rate billed by insurance defense counsel in an arbitration over claimed attorney malpractice and fees represented the maximum hourly rate reasonably recoverable as attorney fees. The appellate court refused to "accept a rule that requires a trial court to limit its fee award to the amount incurred in all circumstances except under 'unique factual circumstances' such as pro bono cases, contingency fee cases and representation by in-house counsel." (*Id.* at p. 652.) The Nemecek litigants prevailed in the arbitration. They were represented by counsel hired by their insurer. Nemececk's counsel sought an hourly rate based on the *Laffey* Matrix (for a total fee of $45,759.81) and did not disclose their actual hourly rates in the matter. (*Id.* at pp. 650–651.) In opposition, the appellant presented expert testimony that counsel for Nemecek billed the insurer $100 to $215 per hour for attorney services in the arbitration. The trial court awarded defendant $42,207.31 in reasonable

10

attorney fees and costs—close to the amount sought. The Court of Appeal affirmed. (*Id.* at pp. 651–652.) In so doing, the court not only rejected the argument that the rate billed by Nemecek's counsel represented the maximum reasonable hourly rate in insurance defense cases, but also rejected the claim that the fee request should have been denied because fees were paid by the insurer rather than by the client itself. The court relied upon authority stating that " '[p]laintiffs were not entitled to avoid their contractual obligation to pay reasonable attorney fees based on the fortuitous circumstance that they sued a defendant who obtained insurance coverage providing a defense.' " (*Id.* at p. 652.) (See also, *PLCM Group, supra,* 22 Cal.4th 1084, 1097 [rejecting the argument that the award of fees to in-house counsel based on prevailing market rates for attorney services would likely constitute an " 'unjustified windfall' "]. )

In the instant case, the trial court's rate determination was supported not only by the adjusted *Laffey* Matrix, but also by Finney, an attorney with more than 20 years experience in civil litigation of this type, who stated under penalty of perjury his opinion as to the prevailing rate in the San Francisco Bay Area for the services performed by the attorneys and paralegals in the case—at rates virtually identical to those calculated in the *Laffey* Matrix as adjusted for the San Francisco-San Jose-Oakland Region. Moreover, the trial judge who had presided over the matter viewed the services performed as "sophisticated" legal work and stated the hourly rate requested was "not even close to the highest hourly rate that I have seen in this area."

We reiterate that the trial court is in the best position to value the services rendered by the attorneys in his or her courtroom. (E.g., *Ketchum v. Moses, supra,* 24 Cal.4th at p. 1132.) In the circumstances presented here, we cannot say this judge was " ' "clearly wrong." ' " (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1132.) Consequently, we find no abuse of discretion.

However, we point out that the trial court was neither *required* to follow the *Laffey* Matrix nor to adopt the rate defense counsel opined was the "market rate" for services of this type. Our deference here to the trial court's exercise of its discretion in setting a reasonable attorney fee suggests that had the court determined that the *actual* rate

11

charged was the reasonable rate for the type of services rendered, we would similarly find the court acted within the scope of its discretion.  (See *El Escorial Owners' Ass'n. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1365–1367 [affirming the trial court's reduction of a fee request where, among other things, the trial court found the rates sought were twice the rates billed to the insurance company].)  Our Supreme Court has explained that the reasonable hourly rate used for the lodestar calculation "is that prevailing in the community *for similar work.*"  (*PLCM Group, supra,* 22 Cal.4th at p. 1095; see *Ketchum v. Moses, supra,* 24 Cal.4th at p. 1132 ["the lodestar is the basic fee for *comparable legal services* in the community'], italics added.)  A reasonable trial court might determine that the "similar work" or "comparable legal services" related to insurance defense litigation, rather than to civil litigation in general.  Were the court to so conclude, it could view the relevant "market" to be that of insurance defense litigation and litigators, rather than general civil litigation. The "market rate" for such services might be limited accordingly.  Again, we emphasize that such determinations lie within the broad discretion of the trial court.  They raise a number of issues, not the least of which is that the prevailing plaintiff's privately retained counsel in such circumstances could claim a "market rate" reasonable fee far in excess of the "market rate" reasonable fee that could be claimed by a prevailing opponent whose defense counsel was retained by an insurer.

Be that as it may, we are convinced the trial court did not abuse its discretion in its award of attorney fees to defendants in this case.

DISPOSITION

The order granting defendants' motion for attorney fees is affirmed.  Each party shall recover its own costs on this appeal.

12

_____
Kline, P.J.

We concur:


_____
Haerle, J.


_____
Brick, J.*


     * Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

Filed 5/27/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SYERS PROPERTIES III, INC., | |
|     Plaintiff and Appellant, | |
| v. | A137610 |
| ANN RANKIN et al., | |
|     Defendants and Respondents. | (Alameda County |
| | Super. Ct. No. RG10518323) |

**BY THE COURT:**

The opinion in the above-entitled matter filed on May 5, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Dated:_____          _____P.J.

Trial Court: Alameda County Superior Court

Trial Judge: Hon. George Hernandez, Jr.

Attorneys for Plaintiff and Appellant: Joseph Baxter

Sara Baxter

Cannata, Ching & O'Toole, LLP

Therese Y. Cannata

Juna Kim

Attorneys for Defendants and Respondents Murphy, Pearson, Bradley & Feeney

John H. Feeney

Adam M. Koss