Filed 5/18/16; pub. order 6/16/16 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| 569 EAST COUNTY BOULEVARD LLC et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BACKCOUNTRY AGAINST THE DUMP, INC., <br><br> Defendant and Appellant. | D068538 <br><br><br> (Super. Ct. No. 37-2014-00025797-CU-MC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Law Offices of Stephan C. Volker, Stephan C. Volker, Daniel Garrett-Steinman and Jamey M.B. Volker for Defendant and Appellant.

Mark M. Clairmont and Paul W. Pitingaro for Plaintiffs and Respondents.

Plaintiff 569 East County Boulevard, LLC, and others (plaintiffs) filed an action against numerous entities and individuals.  Plaintiffs' complaint named Backcountry Against the Dump, Inc. (BAD) as a defendant and alleged a single cause of action against

BAD for unlawful interference with prospective economic advantage. BAD moved to strike the action pursuant to Code of Civil Procedure section 425.16,[1] commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) After BAD's anti-SLAPP motion was granted, it sought attorney fees and costs in a total amount of $152,529.15 pursuant to section 425.16, subdivision (c)(1). Plaintiffs did not contest defendant's entitlement to a fees and costs award, but argued the amount sought was exorbitant. The court found BAD was entitled to attorney fees and costs incurred for the successful anti-SLAPP motion, but awarded a reduced amount of $30,752.86. BAD appeals from that order, arguing the reduced award was an abuse of discretion.

I

BACKGROUND

A. The Underlying Action and Anti-SLAPP Motion

Plaintiffs' First Amended Complaint alleged a single cause of action against BAD for unlawful interference with prospective economic advantage.[2] BAD moved to strike the action under the anti-SLAPP statute, arguing the action sought damages from BAD caused by BAD's petitioning activity, and plaintiffs could not demonstrate probable

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Plaintiffs' complaint apparently alleged numerous claims against entities and individuals other than BAD, but BAD has elected to omit a copy of the operative pleading from the appellant's appendix. (See fn. 7, *post*.)

success on the merits.[3]  The court granted the motion to strike plaintiffs' cause of action against BAD alleging unlawful interference with prospective economic advantage.[4]

B. The Attorney Fees and Costs Motion

BAD sought attorney fees and costs as the prevailing party, pursuant to section 425.16, subdivision (c)(1), and requested a total amount of $152,529.15.  The request was supported by a declaration from BAD's counsel, Mr. S. Volker, arguing the appropriate hourly rate for his time (as lead attorney) was $750 per hour for himself as lead attorney, and the appropriate hourly rate for three fifth-year associates was $350 per hour.  He asserted he spent over 170 hours on the merits of the work necessary to the anti-SLAPP motion, and that his associates spent over 40 additional hours on the merits of the work necessary to the anti-SLAPP motion.  He also asserted he spent another 9.4 hours on the fee motion itself.

---

[3]  BAD also demurred to other causes of action asserted in the complaint, including nine causes of action *not* directed at BAD.  Although some of those claims may have been directed at Donna Tisdale (see fn. 7, *post*), it appears the substantive basis for BAD's demurrer was largely based on defenses available to her in her capacity as an elected official (rather than in her other capacities as an private citizen or as an officer of BAD), because the demurrer raised such issues as the statute of limitations under Government Code section 65009, subdivisions (c) and (d), the official and legislative immunities protections enjoyed by elected officials (Gov. Code, §§ 820.9, 822.2), and the bars of the Government Claims Act (Gov. Code, § 905 et seq.) and exhaustion of remedies requirements (Gov. Code, § 91007).

[4]  That ruling was apparently based on the conclusion BAD had met its threshold burden under the anti-SLAPP statute and thereby shifted to plaintiffs the burden to show likely success on the merits (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965; *Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679), and plaintiffs had not shown any economic relationship had been disrupted.

Plaintiffs raised numerous objections to the amount of the request, asserting (1) the hourly rate charged by BAD's attorneys was excessive for the nature of the case, (2) BAD's fee request included billings for work unrelated to the anti-SLAPP motion, or unnecessary, or administrative in nature or duplicative or padded, and (3) BAD's fee request included fees premised on vague time entries or "block-billed" time. For all of these reasons, plaintiffs argued, the amount of the fee and cost award requested by BAD was unreasonable.

The court first determined a reasonable hourly rate for BAD's attorneys was $275 dollars per hour.[5] The court then turned to the question of the reasonable hours expended on the anti-SLAPP motion. After noting it had "culled through the billing statement" submitted by BAD in support of its fee request, the court observed that many of the hours listed in that statement encompassed work "on the demurrer, coordinating with other counsel, work related to the [case management conference], and duplicative time with

---

5    The court premised its hourly rate determination on its earlier determination concerning the reasonable hourly rate for the work performed by the attorney who *separately* represented Ms. Tisdale in her anti-SLAPP motion directed at the same pleadings. The attorney separately representing Ms. Tisdale had 27 years of experience practicing in San Diego and charged $275 per hour, and the court determined there was "no reason to deviate from this determination" for BAD's counsel, who was "equally qualified" as Tisdale's counsel. The court, after granting Tisdale's anti-SLAPP motion, ultimately awarded her counsel $71,485 as reasonable attorney fees. In the same proceeding, the court also considered the proper fee award to the attorneys for numerous other parties to this action (i.e. Endangered Habitat League, Inc., Endangered Habitats Conservancy, Inc., Protect Our Communities Foundation, Inc., and Michael Beck) who occupied a similar position as BAD: plaintiffs asserted a single cause of action against them, and they successfully moved to dismiss that claim under the anti-SLAPP statute. The court awarded attorney fees of less than $30,000 to these defendants.

4

[cocounsel]." The court also observed that, although BAD's counsel "express[ed] confusion with the pleadings, there was only one cause of action that was the subject of the anti-SLAPP motion and the issues were not especially novel or complex." The court ruled 103.6 hours was a reasonable amount of time spent on the anti-SLAPP motion and the fee motion, and awarded $28,290 as fees.

II

ANALYSIS

BAD asserts the court erred in calculating the fee award in two respects. First, BAD argues the court erred when it selected $275 as the reasonable hourly rate to be applied to hours worked in connection with the anti-SLAPP motion. Second, BAD argues it was error to reduce the hours worked in connection with the anti-SLAPP motion below the number of hours it claimed in its fee motion.

A. Legal Framework

*Principles Applicable to Attorney Fees Award*

Section 425.16, subdivision (c), provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." It is well established that "[t]he amount of an attorney fee award under the anti-SLAPP statute is computed by the trial court in accordance with the familiar 'lodestar' method. [Citation.] Under that method, the court 'tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work. [Citations.]' " (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 491 (*Cabral*).)

5

"[A]s the parties seeking fees and costs, defendants 'bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' [Citation.] To that end, the court may require defendants to produce records sufficient to provide ' "a proper basis for determining how much time was spent on particular claims." ' " (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1020.) Importantly, when considering a fee award, the trial court is not required to award the amount sought by the successful moving parties,[6] but instead "is obligated to award 'reasonable attorney fees under section 425.16 [that] adequately compensate[] them for the expense of responding to a baseless lawsuit.' " (*Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 92.)

A prevailing defendant on an anti-SLAPP motion is entitled to seek fees and costs " 'incurred in connection with' " the anti-SLAPP motion itself, but is not entitled to an award of attorney fees and costs incurred for the *entire* action. (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 21; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1383.) An award of attorney fees to a prevailing defendant on an anti-SLAPP motion properly includes attorney fees incurred to litigate the special motion to strike (the merits fees) plus the fees

---

6    Indeed, there is authority that holds an unreasonably inflated fee request permits the trial court to deny any request for fees at all. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322 (*Christian Research*).) The rationale for this discretionary authority is that, if the trial court were required to award a reasonable fee when counsel overreached, it would encourage overreaching because the only penalty would be recovery of the reasonable fee for which counsel should have sought reimbursement from the start. (*Ibid.*)

incurred in connection with litigating the fee award itself (the fees on fees). (*Wanland,* at p. 21.) However, a fee award under the anti-SLAPP statute may not include matters unrelated to the anti-SLAPP motion, such as "attacking service of process, preparing and revising an answer to the complaint, [or] summary judgment research." (*Christian Research, supra,* 165 Cal.App.4th at p. 1325.) Similarly, the fee award should not include fees for "obtaining the docket at the inception of the case" or "attending the trial court's mandatory case management conference" because such fees "would have been incurred whether or not [the defendant] filed the motion to strike." (*Ibid.*) In short, the award of fees is designed to " 'reimburs[e] the prevailing defendant for expenses incurred *in extracting* herself from a baseless lawsuit' " (*Wanland,* at p. 22, italics added) rather than to reimburse the defendant for all expenses incurred *in* the baseless lawsuit.

*Standard of Review*

Although a SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees, he or she is entitled " 'only to reasonable attorney fees, and not necessarily to the entire amount requested. [Citations.]' [Citation.] We review the trial court's ruling for abuse of discretion" (*G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 620), and we will not disturb the trial court's fee determination " ' "unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).) When reviewing attorney fee awards, an appellate court must "[i]ndulg[e] all inferences in favor of the trial court's order . . . [and] presume the

7

trial court's attorney fees award is correct."[7]  (*McKenzie v. Ford Motor Co.* (2015) 238

Cal.App.4th 695, 704.)  Where, as here, a trial court severely curtails the number of

compensable hours in a fee award, the operative impact of that presumption includes a

presumption the trial court concluded the fee request was padded.  (See, e.g., *Levy v.*

*Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 817 [substantial reduction in

claimed costs "indicat[es] Levy improperly inflated his claimed" amounts]; *Christian*

*Research, supra,* 165 Cal.App.4th at pp. 1323 & 1326 ["[w]hen the trial court

substantially reduces a fee or cost request, we infer the court has determined the request

was inflated"; trial court has discretion to substantially reduce fee request where record

contains evidence permitting conclusion the "fee request is unreasonably padded, vague,

and worthy of little credence" based on the trial court's own observations of the

proceedings and the billing records submitted].)

---

7      An additional principle of appellate review is operative in this appeal.  It is
fundamental that an order is presumed correct, and the burden of affirmatively
demonstrating error is on the appellant.  (*Fundamental Investment etc. Realty Fund v.*
*Gradow* (1994) 28 Cal.App.4th 966, 971.)  This places on appellant the burden to provide
an adequate record on appeal to allow the reviewing court to assess the purported error
(*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416), and if
the record on appeal does not contain all of the documents or other evidence considered
by the trial court, a reviewing court will "decline to find error on a silent record, and thus
infer that substantial evidence" supports the trial court's findings.  (*Haywood v. Superior*
*Court* (2000) 77 Cal.App.4th 949, 955.)

ANALYSIS

A. <u>The Abuse of Discretion Standard Applies to This Appeal</u>

Although BAD acknowledges the ordinary standard of review for fee awards is the deferential abuse of discretion standard, it appears to argue we should apply a de novo review to its claims in this appeal. BAD notes the determination of whether the trial court applied proper legal standards in making its fee determination is reviewed de novo. (See, e.g., *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) BAD cites numerous cases, including *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, to argue a fee award can be reversed when the court applied the wrong legal standards, and asserts those authorities support reversal of the fee award in this case.

The cases cited by BAD for its argument in favor of de novo review have no persuasive applicability here, because the record makes clear the court did not misunderstand the legal matrix that guided its evaluation of BAD's fee request. The minute order addressing the various fee requests specifically recites that the amount of an attorney fee award under the anti-SLAPP statute is to be computed by the lodestar method, which begins with calculating the number of hours reasonably expended on the anti-SLAPP motion (and the fees on fees motion) and excluding hours spent on non-SLAPP tasks or that were inefficient or duplicative, and then multiplying those hours by the reasonable hourly rate prevailing in the community for similar work to obtain the "lodestar" (see, e.g., *Cabral, supra,* 177 Cal.App.4th at p. 491), and then considering whether to adjust that lodestar upwards or downwards under the facts of the case.

9

Because the record affirmatively shows the court understood and employed the correct legal matrix here, the cases cited by BAD have no application. For example, in *Graham v. DaimlerChrysler Corp., supra*, 34 Cal.4th 553, the court merely held that a trial court award, calculated by applying the same "risk multiplier" to a lodestar amount that amalgamated both fees and "fees on fees" work, should be reconsidered "in light of this opinion's conclusion that the risk multiplier for [fees on fees work] generally should be lower than for fees in the underlying litigation." (*Id*. at p. 584.) Thus, the ruling in *Graham* was premised on the finding the trial court did not apply (and indeed could not have applied) the new principle decided in *Graham*, which has no application here. The other authorities cited by BAD are appear to be similarly inapposite.[8] Because we

---

[8] For example, BAD cites *Rogel v. Lynwood Redevelopment Agency* (2011) 194 Cal.App.4th 1319 as an example of a court reversing a fee determination where the court failed to apply the correct legal standards. However, in *Rogel*, the trial court calculated a lodestar of approximately $2.7 million for attorney fees in litigation against a governmental agency, but then applied a negative multiplier to that lodestar (reducing the award to approximately $540,000) because the court stated " '[I]t seems as though the money should be spent in Lynwood and not on the lawyers.' " (*Id*. at p. 1328.) *Rogel* reversed because it concluded that preservation of the government fisc was not a proper factor to consider when applying a multiplier to the lodestar. (*Id*. at p. 1321.) Here, although the award was less than sought by BAD, the *rationale* for the award was limited to proper factors (the court's evaluation of hours *reasonably* expended on the anti-SLAPP and the fees on fees motions and the *reasonable* hourly rate prevailing in the community), rendering *Rogel's* de novo consideration of the award inapposite. The other cases involved similar defects in the award. (See *Hogar Dulce Hogar v. Community Development Com. of City of Escondido* (2007) 157 Cal.App.4th 1358, 1361 [reversing where record showed court categorically excluded from award any pre-litigation attorney fees, and most of work on "fees on fees" motion, even though law clearly provided both categories were properly awardable]; *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 154-155 [reversing award for numerous errors, including error in setting attorney fee hourly rate at lower "expert witness fee" rate where *only* evidence of

10

perceive that BAD's appellate attack on the fee award challenges *how* the court applied the applicable standards to its fee request, rather than on *what* standards the court employed, we reject BAD's argument that this court may abandon the abuse of discretion standard of review in favor of a de novo review of the fee award.

B. The Hourly Rate Claim

BAD first asserts that, when tabulating the lodestar, the trial court abused its discretion when it set a flat hourly rate of $275 for all of BAD's counsel because that rate disregarded the different levels of experience for each of BAD's counsel and disregarded BAD's evidence of the prevailing market rate.

The courts have repeatedly stated that the trial court is in the best position to value the services rendered by the attorneys in his or her courtroom (see, e.g., *Ketchum, supra*, 24 Cal.4th at p. 1132), and this includes the determination of the hourly rate that will be used in the lodestar calculus. (See, e.g., *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 700-703.) In making its calculation, the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009), the difficulty or complexity of the litigation to which that skill was applied (*Syers Properties* at p. 700; accord, *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1114), and affidavits from other attorneys regarding

reasonable hourly rate prevailing in the community was of higher rate and that evidence was unrebutted and opposing counsel indicated it was not challenging the higher rate].)

11

prevailing fees in the community and rate determinations in other cases. (*Heritage,* at p. 1009.)

Here, the parties presented conflicting affidavits concerning the appropriate hourly rate for seasoned attorneys and fifth year associates. BAD's expert, who premised his opinion on numerous factors (including the so-called "*Laffey* Matrix"), testified that $750 per hour for Mr. S. Volker and $350 per hour for the three fifth-year associates working on the case was within the market range charged for similar services by similarly qualified attorneys. However, plaintiffs submitted contrary declarations that the market range charged for similar services by similarly qualified attorneys was much lower.[9] Moreover, the court was cognizant that the rate charged by a very seasoned attorney who represented Ms. Tisdale in this same litigation, and whose anti-SLAPP motion successfully extricated her from the multiple and complex claims pleaded against her, was $275 per hour, and noted the anti-SLAPP motion by BAD's attorneys involved only a single cause of action and did not involve either novel or complex issues.

On this record, the trial court concluded $275 per hour was an appropriate rate to apply to the hours properly attributable to BAD's anti-SLAPP motion. Certainly, the trial court was not bound by the contrary opinions submitted by BAD's expert. (*Syers Properties III, Inc. v. Rankin, supra*, 226 Cal.App.4th at p. 702 ["the trial court was

---

[9] Two of plaintiffs' experts testified the range charged by a fifth-year associate would begin as low as $200 per hour and one of those experts further noted such associates "will be doing the 'heavy' lifting work of research and initial drafting of the pleadings" as well as still being on their "learning curve."

neither *required* to follow the *Laffey* Matrix nor to adopt the rate defense counsel opined was the 'market rate' for services of this type"].)  BAD's appellate argument merely asks this court to reweigh the competing evidence.  For example, BAD suggests the $275 rate charged by Tisdale's counsel was an "admittedly low-end contract rate with a public entity," and hence cannot represent an appropriate market rate, without citing anything in the record containing that "admission."[10]  BAD also argues the $275 rate was below the appropriate market rate because even plaintiffs' experts concluded $450 was an appropriate rate for a seasoned attorney (Mr. S. Volker), but that argument ignores the evidence supporting the $275 per hour market rate as found by the trial court (see fn. 10, *ante*) as well as the opinion by plaintiffs' experts that the *heavy lifting* would ordinarily be done by younger associates, whose rates would begin as low as $200 per hour, rather than by a senior attorney at a higher billing rate.  Because there was evidence this was a relatively uncomplicated anti-SLAPP motion, in which the yeoman's work could have been handled by associates billing much lower rates, there was evidence on which the trial court could have concluded the " 'reasonable hourly rate prevailing in the community

---

10     To the contrary, because BAD has not provided this court with the record on which the court premised its conclusion that $275 per hour was an appropriate market rate for a seasoned counsel (i.e. the attorney who represented Ms. Tisdale), we must presume substantial evidence supports the finding that $275 per hour is an appropriate market rate for a seasoned attorney.  (See fn. 7, *ante*.)

13

for similar work' " (*Cabral, supra,* 177 Cal.App.4th at p. 491) was $275 per hour rather than the much higher rates charged by attorney S. Volker.[11]

BAD's claim—that failure to adopt the rates set forth by its expert was an abuse of discretion—is unconvincing.  Instead, we conclude the trial judge was " ' "the best judge of the value of professional services rendered in his court" ' " (*Ketchum, supra,* 24 Cal.4th at p. 1132) and we affirm his determination because we are not " ' "convinced that it is clearly wrong." ' "  (*Ibid*.)

C. <u>The Total Hours Claim</u>

BAD's fee motion submitted declarations, along with billing summaries, averring it spent 213.7 hours on the merits motion (nearly 80 percent of which was attributed to the senior attorney's efforts) and another 86.7 hours on the fees on fees motion (largely attributed to the work of the associates).  BAD argues the court abused its discretion by reducing the hours worked in connection with the merits and fees on fees motions below the hours claimed by BAD in its fee motion.[12]

---

[11]     The federal courts appear to be in accord.  (See *Fisher v. City of San Diego* (S.D. Cal. Aug 14, 2013) 2013 WL 4401387 at p. *2 ["While delegation of more routine tasks is not required, an attorney who does everything himself would typically bill at a lower hourly rate than one who does only the most difficult work.  This avoids 'top-heavy' billing."]; accord, *Hernandez v. Taqueria El Grullense* (N.D.Cal. June 11, 2014) 2014 WL 2611214, at p. *3 ["[S]ince *Moreno,* various courts in the Ninth Circuit have found that hours are not reasonably expended when routine tasks are billed by highly experienced attorneys, rather than being delegated to colleagues with appropriate levels of experience."].)

[12]     BAD also appears to assert it was error for the trial court (1) to render an award for a lump sum number of hours rather identifying the hours it attributed to the merits motion and separately identifying the hours it attributed to the fees on fees motion, and

14

We conclude the decision to premise the lodestar amount by using an hour multiplier that was fewer hours than claimed by BAD was not an abuse of discretion. Although BAD's billing statements in support of a fee request form the " 'starting point' " for the " ' "hours reasonably expended" ' " component of the lodestar calculation (*Christian Research, supra,* 165 Cal.App.4th at p. 1324), the trial court is not bound to accept the evidence submitted by counsel when making its determination (*id*. at p. 1326), and may reduce the hours if it concludes the attorneys performed work unrelated to the anti-SLAPP motion, or represented work that was unnecessary or duplicative or excessive in light of the issues fairly presented. (*Ibid*.) When a trial court "is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." (*Ketchum, supra*, 24 Cal.4th at p. 1138, fn. omitted.)

Here, the record contains sufficient support for the trial court's decision to adjust downward the hour component for the lodestar calculus. First, the court could conclude

(2) to reduce the hours without providing a mathematically-based explanation for the reductions it applied to each of the two motions. However, BAD cites no authority suggesting a trial court's determination of the appropriate amount of the fee award will be reversed absent some type of statement of decision, and the law is to the contrary. (*Ketchum, supra*, 24 Cal.4th at p. 1140 [rejecting claim that award requires " 'reasoned explanation' " for determinations on specific items within award; a trial court is "not required to issue a statement of decision with regard to the fee award."].) Moreover, BAD cites no authority suggesting a fee award may be reversed merely because the trial court awarded a reduced amount without explicit explanations about disallowed hours or unapportioned hours, and the law appears to be to the contrary. (See, e.g., *Rebney v. Wells Fargo Bank* (1991) 232 Cal.App.3d 1344, 1349 [as long as record demonstrated award was based on lodestar approach, court is "not required to explain which of counsel's hours were disallowed, or how or whether any hours were apportioned" and appellate court must infer all findings on these points in favor of prevailing parties].)

15

many of the hours represented work unrelated to either the merits motion or the fees motion, such as work on discovery, ex parte appearances, work surrounding the case management conference, and conferring with cocounsel. The court could also have concluded downward adjustment was necessary because many billings involved entries that were either vague or were "blockbilled" time entries, and represented padding.[13] (*Christian Research, supra,* 165 Cal.App.4th at pp. 1325-1326.) Finally, the court could have concluded a substantial number of the hours claimed by BAD were unnecessary[14] because it concluded that, although BAD's counsel had "expresse[d] confusion with the pleadings," the court found "there was only one cause of action that was the subject of [BAD's] anti-SLAPP motion and the issues were not especially novel or complex."

Under these circumstances, we cannot conclude the trial court abused its discretion in limiting the hour component of the lodestar calculus to a combined amount, for both the merits motion and the fees on fees motion, to over 100 hours.

---

[13]     As the court observed in *Christian Research, supra,* 165 Cal.App.4th at pp. 1325-1326: "Where, as here, the trial court severely curtails the number of compensable hours in a fee award, we presume the court concluded the fee request was padded. [Citations.] An attorney's chief asset in submitting a fee request is his or her credibility, and where vague, blockbilled time entries inflated with noncompensable hours destroy an attorney's credibility with the trial court, we have no power on appeal to restore it."

[14]     Many of the hours claimed by BAD were expended to prepare and file a demurrer (mooted by the order granting the anti-SLAPP motion) attacking causes of action *not* directed at BAD. Although BAD appears to assert on appeal the court erred by excluding the efforts its attorneys devoted to the demurrer, because those efforts developed legal arguments that were "clearly 'inextricably intertwined' " with the arguments necessary to its successful anti-SLAPP motion, that argument was presented below and was rejected by the court. We must presume on this record (see fn. 7, *ante*) that the court had substantial evidence on which to reject this claim.

16

DISPOSITION

The trial court's attorney fees award is affirmed.  Plaintiffs are entitled to their costs on appeal.


McDONALD, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| 569 EAST COUNTY BOULEVARD LLC et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>BACKCOUNTRY AGAINST THE DUMP, INC.,<br><br>    Defendant and Appellant. | D068538<br><br>(Super. Ct. No.<br> 37-2014-00025797-CU-MC-CTL)<br><br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in this case filed May 18, 2016, was not certified for publication. On the court's own motion, it appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105):

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McDONALD, Acting P. J.

Copies to: All parties