Filed 8/16/22  Ayala Boring v. HPS Mechanical CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| AYALA BORING, INC., | F082276 |
| Plaintiff and Appellant, | (Super. Ct. No. BCV-19-102029) |
| v. | |
| HPS MECHANICAL, INC., | **OPINION** |
| Defendant and Respondent. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Mahoney & Soll, Paul M. Mahoney and Richard A. Soll for Plaintiff and Appellant.

McCartney Dallmann, N. Thomas McCartney and Matthew C. McCartney for Defendant and Respondent.

-ooOoo-

Plaintiff and appellant Ayala Boring, Inc. (Ayala) appeals from a January 4, 2021 postjudgment order of the Kern County Superior Court awarding attorney's fees to defendant and respondent HPS Mechanical, Inc. (HPS) under Civil Code section 1717.[1, 2] Ayala makes three contentions. First, the order "should be reversed because the contract at issue is a third-party beneficiary contract and there was no evidence of any prevailing party attorney's fee clause in that contract." (Capitalization omitted.) Second, "there is no right to attorney's fees on the second and third causes of action," i.e., restitution and conversion. (Capitalization omitted.) Finally, "the court abused its discretion in awarding $70,882.50 in attorney's fees." (Capitalization omitted.)

We conclude that the gravamen of Ayala's lawsuit implicated a subcontract between Ayala and HPS. Therefore, the award of attorney's fees was warranted under that subcontract's attorney's fees provision. We also conclude that the court did not abuse its discretion in awarding $70,882.50 in attorney's fees. Accordingly, we affirm the order.[3]

## FACTUAL AND PROCEDURAL HISTORY

In 2009, HPS entered into a contract with the City of San Diego (City) to serve as the prime contractor for City's South Mission Valley trunk sewer project (Project). HPS then entered into a subcontract with Ayala, an underground pipeline boring contractor. Pursuant to the subcontract, Ayala would receive $394,700 for installing casings and

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Civil Code.

[2] This is the fourth appeal involving Ayala and HPS. (See *Ayala Boring, Inc. v. HPS Mechanical, Inc.* (Aug. 15, 2022, F081857) [nonpub. opn.] (*Ayala III*); *Ayala Boring, Inc. v. HPS Mechanical, Inc.* (Mar. 19, 2021, D076054) [nonpub. opn.] (*Ayala II*); *Ayala Boring, Inc. v. HPS Mechanical, Inc.* (Sept. 17, 2018, D070176) [nonpub. opn.] (*Ayala I*).)

[3] Ayala filed a motion for judicial notice on June 9, 2021. We deferred our ruling pending consideration of the appeal on its merit. Now having done so, we deny Ayala's motion.

2.

sewer lines under Interstate 8 at two Project locations. One location was near the interchange of Interstate 8 and Interstate 15 (Interchange Site), where Ayala would bore a 260-foot tunnel under Interstate 8, install a 36-inch diameter casing, pressure grout the casing, and install a 24-inch customer-furnished sewer pipe through the casing. (*Ayala II*, *supra*, D076054; *Ayala I*, *supra*, D070176.)[4]

On September 22, 2010, Ayala mobilized and began its work at the Interchange Site. Four days later, Ayala encountered large rocks, boulders, and/or other materials that were larger than anticipated and required excavation by hand. It notified HPS of the different site conditions and requested compensation for the extra labor. Ultimately, City, HPS, and Ayala agreed to a change order that would pay Ayala an additional $203,000. Ayala completed its work at the Interchange Site sometime in January 2011. Near the end of that month, the Department of Transportation advised City that Interstate 8's concrete pavement at or around the Interchange Site had "heaved," i.e., risen, as a result of the construction activities and instructed City to fix the damage. City ordered HPS to correct the heave. HPS, which believed that the heave was caused by the pressure grouting, directed Ayala to perform repairs. However, Ayala refused to do so when it learned that HPS intended to withhold the $203,000 change order payment until the heave was fixed. Subsequently, HPS performed repairs at a cost of $199,559.34. (*Ayala II*, *supra*, D076054; *Ayala I*, *supra*, D070176.)

In October 2011, Ayala filed what would become its operative complaint against HPS, alleging a cause of action for breach of contract and seeking payment for the extra labor performed at the Interchange Site due to the different site conditions and of other amounts that HPS wrongfully retained. In March 2015, HPS filed what would become its

---

[4] "Citation of [the] prior unpublished opinion[s] does not violate California Rules of Court, rule 8.1115(a) because '[w]e . . . cite the decision[s] to explain the factual background of the case and not as legal authority.' [Citation.]" (*The Utility Reform Network v. Public Utilities Com.* (2014) 223 Cal.App.4th 945, 951, fn. 3.)

operative cross-complaint against Ayala, alleging a cause of action for breach of contract and seeking reimbursement of the repair costs. A jury trial commenced in January 2016. On the last day of trial, the San Diego County Superior Court granted Ayala's motion to amend its complaint to conform to proof and add a common count for money had and received. Thereafter, the jury returned special verdicts finding (1) in favor of HPS on Ayala's breach of contract claim; (2) in favor of Ayala on its common count for money had and received; and (3) in favor of Ayala on HPS's breach of contract claim. The jury calculated Ayala's damages to be $249,470 and the court entered judgment in that amount. The court also awarded Ayala prejudgment interest as well as attorney's fees and costs as the prevailing party on its complaint. (*Ayala II*, *supra*, D076054; *Ayala I*, *supra*, D070176.)

On appeal, Division One of the Fourth Appellate District reversed the judgment to the extent that it found in favor of Ayala on the common count for money had and received and reversed the award of prejudgment interest on the compensatory damages awarded by the jury. In addition, because of the then-mixed results obtained by the parties, the attorney's fees and costs awards were reversed. The superior court was directed on remand to conduct further proceedings and enter a new judgment consistent with the appellate opinion.[5] (*Ayala II*, *supra*, D076054; *Ayala I*, *supra*, D070176.)

---

[5] On remand, the San Diego County Superior Court denied HPS's motion for an award of attorney's fees as the prevailing party on the contract but granted various trial costs and costs on appeal, including expert witness fees, mediator fees, reporter's fees, and surety bond premiums. The court entered an amended judgment that found in favor of HPS on Ayala's complaint and ordered Ayala to pay HPS costs and disbursements totaling $205,095.63. On appeal, Division One of the Fourth Appellate District affirmed the order denying attorney's fees and reversed the order awarding HPS costs and the amended judgment to the extent that they awarded expert witness fees and mediation fees. (*Ayala II*, *supra*, D076054.)

In a complaint filed in the San Bernardino County Superior Court on January 22, 2019, Ayala brought a third-party beneficiary's claim for breach of written contract as well as claims for restitution and conversion against HPS, seeking "general damages in the sum of $249,700." This amount included the $203,000 change order payment, a $39,470 contract retention, and a $7,000 fee for an additional mobilization. In addition, Ayala brought a claim against American Contractors Indemnity Company (American Contractors) on a contractor's license bond issued and delivered to HPS, seeking "damages . . . in the sum of $15,000." The complaint detailed:

"6.     This case arises out of a public works construction project . . . (hereinafter 'Project'). The owner of the Project was . . . City . . . . The general contractor was HPS.

"7.     HPS entered in a prime contract with . . . City . . . to perform the entire Project, which consisted of removing and replacing 2,900 feet of sewer lines in the South Mission Valley area of San Diego.

"8.     [Ayala] is a licensed subcontractor that specializes in tunneling, boring, jacking, and other trench-less technology for installation of underground pipe without the need for digging a trench. It has been in business for over 35 years.

"9.     [Ayala] was hired by HPS to perform a portion of the underground work on this [P]roject. [Ayala]'s scope of work was to tunnel, bore, jack, and install underground steel casing pipe under the Interstate 8 ('I-8') freeway. Once the steel casing was bored and jacked under the freeway, [Ayala] would install customer furnished carrier pipe inside the steel casing which would be pressure grouted.

"10.     Prior to commencement of the work, . . . City . . . provided HPS with geotechnical bore logs for the underground crossing under the I-8 freeway between manhole 18 and manhole 19. This is located between Camino del Rio North and Camino del Rio South. Bore logs are logs prepared by a licensed geotechnical (soils) engineer depicting the underground soils conditions that the contractor can expect to encounter.

"11.     [Ayala] commenced working at the underground crossing between manhole 18 and manhole 19 [under the I-8 freeway]. Shortly after [Ayala] started to drill the underground tunnel, soils conditions were

5.

encountered that were not consistent with the bore logs. Specifically, large rocks and boulders were encountered that interfered with the work. This would increase the cost of the work.

"12.   [Ayala] notified HPS about this condition, and HPS brought this matter to the attention of . . . City . . . .

"13.   . . . City . . . performed an investigation, and made a determination that the conditions encountered were not as depicted in the bore logs, and that this constituted a differing site condition. A series of discussions ensued between HPS and . . . City . . . .

"14.   As a result of those discussions, HPS and . . . City . . . entered into a separate written agreement, the terms of which are as follows: . . . City . . . agreed to pay HPS $298,331.35 because of the differing site condition. From this amount, HPS agreed to pay [Ayala] the sum of $203,000 to hand tunnel and remove the large rocks and boulders that interfered with the work.

"15.   At all times mentioned herein, [Ayala] was an intended third party beneficiary of the aforementioned written agreement between HPS and . . . City . . . .

"16.   [Ayala] has performed all covenants and conditions required to be performed as a third party beneficiary referred to herein, except insofar as excused by the acts and conduct of Defendants, and each of them. Specifically, [Ayala] removed the large rocks and boulders in conformity with the written agreement between HPS and . . . City . . . .

"17.   HPS breached the third party beneficiary contract by failing to pay the $203,000 that HPS received from . . . City . . . ."

Pursuant to an indemnity agreement, HPS assumed responsibility for American Contractors' legal defense.

HPS and American Contractors propounded to Ayala "SPECIAL INTERROGATORIES, SET ONE" dated March 14, 2019. In particular, "Special Interrogatory No. 3:" read:

"Please IDENTIFY all DOCUMENTS which support the allegation set forth in paragraph 15 of the COMPLAINT that Ayala was an intended third party beneficiary of the written agreement alleged."

6.

In a "**SUPPLEMENTAL ANSWERS TO SPECIAL INTERROGATORIES, SET ONE**" dated May 9, 2019, Ayala responded:

> "**SUPPLEMENTAL ANSWER TO SPECIAL INTERROGATORY NO. 3**:
>
> "The contract between AYALA and HPS, and the written contract and change order between HPS and . . . City . . . and related documents and all documents introduced at trial relating to the written contract between AYALA and HPS and HPS and . . . City . . . also the testimony of Len [*sic*] Denherder[6] and representatives of . . . City . . . testimony at trial. Discovery continuing."

HPS moved for a change of venue. In or around July 2019, the case was transferred from the San Bernardino County Superior Court to the Kern County Superior Court.

On March 2, 2020, HPS and American Contractors filed motions for summary judgment. They argued that Ayala's various causes of action were barred by relevant statutes of limitations as well as the doctrine of res judicata. On May 21, 2020, Ayala filed its opposition. A motion hearing was conducted on June 8, 2020. Thereafter, in a written ruling dated June 22, 2020, the Kern County Superior Court determined that "there is no triable issue as to any material fact and that HPS and American Contractors . . . are entitled to judgment as a matter of law on the grounds that Ayala's complaint is barred by the principles of res judicata and the applicable statutes of limitations . . . ." Judgment was entered on August 18, 2020.[7]

On July 27, 2020, HPS moved for a court order "(1) declaring that HPS is entitled to attorney's fees as an item of costs under . . . section 1717; (2) fixing the amount of attorney's fees to which HPS is so entitled under Section 1717; and (3) awarding to HPS

---

[6] Les DenHerder is HPS's president.

[7] On appeal, we concluded that Ayala's claims were time-barred and affirmed the judgment. We did not address the issue of res judicata. (*Ayala III*, *supra*, F081857.)

certain statutory and non-statutory costs of suit." Attached were copies of HPS and Ayala's subcontract dated July 16, 2009, and an amendment thereto dated August 28, 2009. The subcontract read in part:

"3.     Payment Schedule:

"[HPS] agrees to pay [Ayala] for this work (including all taxes levied against such work or borne by [Ayala] as a result thereof) the sum of: **$394,700.00** [¶] **EXACTLY THREE HUNDRED NINETY-FOUR THOUSAND SEVEN HUNDRED DOLLARS** [¶] thereinafter referred to as 'Subcontract price,' subject to additions and deductions for changes as may be agreed upon, provided that no payments are to be made unless [Ayala]'s rate of progress, work done and material furnished are as herein agreed upon. [¶] . . . [¶]

"19.     Changes:

"[HPS]'s client has reserved the right under Contract Documents to require [HPS] to make changes in the work, including additions thereto and deletions therefrom. Moreover, [HPS] shall have the right, from time to time, whether the Work or any part thereof shall or shall not have been completed, to make changes, additions and/or omissions in the Work as may be necessary, upon written order to [Ayala]. Without notice to any surety and without invalidating this subcontract, [HPS] may from time to time by written order ('Change Order') to [Ayala], make changes in the Work. [Ayala] shall thereupon perform the changes in the Work in accordance with the terms of this Subcontract and the Change Order.

"Upon request of [HPS], in a time and manner sufficient to permit [HPS] to comply with its obligations under the Contract Documents, [Ayala] shall submit a written proposal for any applicable price and time adjustment attributable to the changed work, detailed as [HPS] or [HPS]'s client may require, supported and conforming to the requirements of the Contract Documents.

"Where a Change Order is issued, the price shall be adjusted by the net amount of any direct savings and direct costs, plus profit percentage attributable to the Change Order, and the time for performance of the work may be adjusted according to the Contract Documents . . . . [¶] . . . [¶]

8.

"If the parties are able to agree on the amount of the price adjustment and the extent of any time adjustment, such adjustment shall be set forth in a Change Order which shall be accepted by [Ayala]. If the parties are unable to agree on such adjustments, [HPS] may elect to issue a Change Work Directive to [Ayala] directing such work to be performed by [Ayala], and any adjustments to price or time shall be subject to ultimate determination in accordance with this Subcontract, and [Ayala] shall nonetheless proceed immediately with the changed work. . . . In no event shall [Ayala] proceed with changed work without a change order or a Change Work Directive issued pursuant to this paragraph and [HPS] shall not be liable for any additional costs incurred or delays encountered in the performance of such changed work without such a written change order or a Change Work Directive. . . . [¶] . . . [¶]

"22. Contract Documents:

"This Agreement consists of this Agreement, the general conditions pertaining to the Project, all drawings and specifications related to the Project, and any and all addenda . . . , modifications or change orders thereto, all of which are incorporated herein by this reference (collectively the 'Contract Documents'). . . . [¶] . . . [¶]

"25. Attorneys Fees:

"In the event any legal action or proceeding arising out of this Agreement is brought by either party to this Agreement, the prevailing party shall be awarded, in addition to any other relief that may be granted, the reasonable attorney's fees, costs, including expert witness fees, and expenses incurred in the action or proceeding by the prevailing party."

The amendment read in part:

"18. In item 25. Attorneys Fees the words 'reasonable attorney's fees' will be deleted and replaced with 'actual attorney's fees'."

In a memorandum of points and authorities in support of the attorney's fees motion, HPS contended:

"The subcontract between HPS and Ayala contains the parties' agreement that the prevailing [party] in any litigation arising out of the subcontract would be entitled to its actual attorney's fees and costs. The

9.

parties agreed, in essence, that the prevailing party would be made whole and that the non-prevailing party would be responsible for paying all of the prevailing party's litigation related fees, costs and expenses. [¶] . . . [¶]

"The subcontract at issue herein, as originally drafted by HPS and sent to Ayala, included [a] prevailing party attorney fee provision [under item 25.] [¶] . . . [¶] Ayala then sent HPS an amendment which became part of the subcontract. The 'Amendment to Subcontract Agreement Between Contractor and Subcontractor' modified the . . . attorney's fees clause . . . . [¶] . . . [¶] Thus, the operative attorney's fees provision of the Subcontract reads:

> "In the event any legal action or proceeding arising out of this Agreement is brought by either party to this Agreement, the prevailing party shall be awarded, in addition to any other relief that may be granted, **the actual attorney's fees, costs,** including expert witness fees, and expenses incurred in the action or proceeding by the prevailing party. (emphasis added)

"The proposal, prepared by Ayala, contains another section relating to attorney's fees and costs. It reads:

> "27. ATTORNEY FEES: In the event that this agreement is placed with an attorney to enforce its provisions, the prevailing party shall be entitled to full reimbursement of all attorney's fees and costs regardless of the size of the judgment.[8] [¶]. . . [¶]

"The foregoing provisions make clear the parties agreed that the prevailing party would be made whole and that the non-prevailing party would be responsible for paying all of the prevailing party's litigation related fees, costs and expenses. [¶] . . . [¶]

"The attorney fee provision in this case provides for the recovery of actual attorney's fees rather than reasonable attorney's fees. The actual fees incurred in this case total with respect to which HPS seeks an award is $76,555. Accordingly, HPS is entitled to an award of fees in this amount.

"HPS should be awarded this amount of fees regardless of whether the award is based on actual fees incurred or on reasonable fees. Here the fees are well documented by detailed descriptions in the billings. Some of these fees are the direct result of Ayala's unreasonable conduct. Ayala

---

**8** A copy of Ayala's proposal dated June 29, 2009, was attached to DenHerder's declaration in support of HPS's attorney's fees motion.

10.

deliberately filed this case in San Bernardino County despite a contract provision placing venue in Kern County. Ayala then refused to agree to a transfer of the case to Kern County. After unsuccessfully opposing a motion to change venue, Ayala unsuccessfully sought a writ of mandate to keep the case in San Bernardino. Ayala then refused to cooperate in the transfer to Kern County.[9]

"The motions for summary judgments were also labor intensive in that they required a complete and careful review of the entire record on the proceedings in the first case including a review of all trial proceedings."

N. Thomas McCartney,[10] one of the attorneys of record for HPS and American Contractors, filed a declaration in support of the motion. Attached were invoices "for services rendered and costs incurred in connection with this case" between January 2019 and June 2020. Under penalty of perjury, N. Thomas McCartney avowed:

"4.     My son, Matthew C. McCartney, and I performed vast majority of the attorney services outlined in the above bills. Sara Gold, an associate attorney, also performed some of the legal work.

"5.     I have practiced law for over 40 years and I have had numerous trials in various counties in this state including San Diego County, Riverside County, Los Angeles County, Orange County, Monterey County, Kings County, San Luis Obispo County, Sacramento County, Santa Barbara County, Kern County and others. My son has tried several cases with me and has also tried cases without me including construction lawsuits in State and Federal courts.

"6.     Matthew C. McCartney has practiced law for over 17 years specializing in construction litigation and intellectual property. In addition

---

**9** The subcontract originally provided that "the exclusive venue for any action or proceeding arising out of or in any way connected with this agreement shall be a court of proper jurisdiction in Kern County, California, Or the Eastern District of California." Subsequently, the amendment stated:

"If the Owner is involved in any litigation, the venue will be San Diego. If any potential litigation exists only between HPS and Ayala then the venue will be Kern County." (Boldface omitted.)

**10** Henceforth, to avoid confusion, individuals who share the McCartney surname will be identified by their full names.

to being duly admitted to practice before all the courts of the State of California, Matthew C. McCartney is also a licensed patent attorney.

"7.    For most of the duration of this case HPS was charged at the highest rate of $250 an hour. However, during the pendency of this action HPS and my firm agreed to charge fees at the rate of $325 for all partners for all HPS litigation which consists of this case and two other matters. The billing rate for Sara Gold in this matter was $200.00 an hour.

"8.    Although the billings provide detailed descriptions of the services performed, a summary of the proceedings in this case is in order. Ayala originally filed this matter in San Bernardino court, even though the subcontract out of which this case arose places venue in Kern County. After HPS successfully moved for an order changing venue, Ayala filed a writ of mandate seeking to reverse the change of venue order. My office then prepared answers on behalf of both HPS and its bonding company, American Contractor[s] . . . . After the order was denied Ayala failed to cooperate with the transfer. HPS eventually propounded written discovery which generated several 'meet and confer' letters and several supplemental responses. Thereafter HPS and American Contractors filed their respective summary judgment motions. HPS also filed a motion to amend the answer to the complaint, which was granted.

"9.    Although it was apparent to me from reading the complaint that this lawsuit was likely barred by principles of res judicata and also likely time barred, Ayala revealed in its discovery responses a unique theory: the cause of action out of which this lawsuit arose accrued when the [C]ourt of [A]ppeal reversed the judgment in the first case between Ayala and HPS.

"10.    The work needed to support the res judicata arguments advanced in the motions and accepted by the Court was further complicated by the fact that Ayala, on the eve of trial in the first case, fundamentally changed its litigation position. The original complaint and the first amended complaint alleged that Ayala should recover $451,113.98. The $451,113.98 claim was based on Ayala's theory that a portion of the subcontract price attributable to the crossing for the 36-inch casing should be replaced by a new theory of recovery based on a time and material basis. This theory required Ayala to repudiate the $203,000 change order agreement with which this Court is familiar. On October 15, 2015, Ayala made known for the first time in the first lawsuit, that it was going to abandon its hybrid theory of $451,113.98 in contract damages and seek to recover on $203,000 and the remaining unpaid items of the subcontract.

12.

"11.    As a result of the circumstances set forth in paragraphs 8 and 9 above, extra effort had to be devoted to demonstrate that Ayala was in fact pursuing in the current lawsuit the same case that it pursued and lost in the first lawsuit.  That extra effort required detailed reference to the trial proceedings, including reference to the reporter's transcript, post-trial proceedings, the record on appeal including the decision of the appellate court and Ayala's attempts to undo this decision.

"12.    HPS has in fact paid all the fees billed to date in this case.  As of the filing of this motion billed and unbilled fees for which an award is sought total $76,555.0[0]. . . ."

In its opposition to HPS's motion for attorney's fees filed on September 18, 2020, Ayala made at least three arguments.  First, "[t]he operative contract in this lawsuit is the contract between HPS and . . . City"—not "the subcontract between HPS and AYALA"—and "[t]here is no evidence before this Court of any prevailing party attorney's fee clause in the operative contract."  Second, in the event "HPS may try to argue that it is entitled to attorney's fees on the second and third causes of action of the Complaint," i.e., restitution and conversion, these causes of actions "are derivative from the first cause of action" and "based on a third-party beneficiary contract" and "there is no showing that the operative third-party beneficiary agreement between HPS and . . . City would allow for recovery of attorney's fees for restitution and conversion."  Lastly, the $76,555 amount "is excessive, inflated, and unreasonable."  Ayala elaborated:

"HPS is seeking $76,555.0[0] in attorney's fees.  How is this possible?  There was no trial, no trial preparation, no exchange of witness and exhibit lists, no preparation of exhibit books, no motions in limine, no expert exchanges, no expert depositions, no witness depositions, no discovery motions, etc.

"According to the invoices of N. Thomas McCartney that are attached to his moving declaration, HPS incurred approximately 2/3 of the attorney's fees working on the Motion for Summary Judgment. . . .  The total amount is $47,837.50.

". . .  This was not a complex case.  The vast majority of the [charges] are duplicative of one another.  Over and over again, there are block entries for 'Further work on motion for summary judgment' without

13.

any detail or explanation of what was actually done. There is no way the Court can properly analyze whether these charges were duplicative, unnecessary, or unreasonable."

On September 25, 2020, HPS filed a memorandum of points and authorities replying to Ayala's opposition. Citing N. Thomas McCartney's supplemental declaration in support of the attorney's fees motion, which was filed concurrently, HPS countered:

"Although Ayala makes a generalized suggestion that the fees paid by HPS were excessive, it only specifically addresses the fees incurred in connection with the motions for summary judgment. . . . [¶] . . . [¶]

"HPS was billed a total of 115.7 hours for the work on the moving papers for a total fee of $37,347 for this work. [Citation.] There were two motions for summary judgment. These papers included two notices of motion, two separate statements of undisputed facts and two separate memoranda of points and authorities. The moving papers included also a joint appendix of exhibits, a joint request for judicial notice, a joint declaration of Les DenHerder, and a joint declaration of N. Thomas McCartney.

"Several of the entries with general descriptions such as 'further work on motion for summary judgment' actually reflect research efforts through counsel's LexisNexis library. [Citation.] Before the moving papers were filed such research was conducted on the following days: May 16, 2019[;] May 17, 2019[;] May 18, 2019[;] May 20, 2019[;] May 21, 2019[;] May 28, 2019[;] August 28, 2019[;] September 3, 2019[;] October 21, 2019[;] October 22, 2019[;] October 23, 2019[;] October 24, 2019[;] October 27, 2019[;] November 13, 2019[;] December 30, 2019[;] December 31, 2019[;] January 25, 2020[;] January 27, 2020[;] January 28, 2020[;] January 29, 2020[;] February 4, 2020[;] February 5, 2020[;] February 6, 2020[;] February 16, 2020[;] February 17, 2020[;] February 20, 2020 and February 21, 2020. [Citation.] This research is reflected in the memoranda filed by HPS in support of the motions which collectively cited 22 cases and 9 statutes.

"Because both motions were based in part on the concepts of res judicata and collateral estoppel, the entire record of the first case needed to be examined. [Citation.] The entire record here consisted of 1,879 pages of reporter's transcript and 351 exhibits. [Citation.] Although not every word of testimony needed to be reviewed and many exhibits in the first trial were not relevant to the motions, the review of the record was nevertheless

14.

labor intensive. [Citation.] Several pages of the reporter's transcript were used to support the motion as were several trial exhibits in the first case.

"The preparation of separate statements of undisputed facts was especially time consuming. [Citation.] There were forty-nine discrete facts included in these statements. As required by law, each of these individual facts was supported by evidence. That evidence included the certified opinion of the appellate court in the first case, trial exhibits in the first case, the aforementioned declarations and numerous references to the certified court reporter's transcript of the trial.

"Additional time was spent in the actual drafting of the memoranda, as well as the preparation of the request for judicial notice, the joint appendix of exhibits and the supporting declarations. [Citation.] [¶] . . . [¶]

"A total of $8,869.50 in fees were incurred in the preparation of the reply papers in response to the opposition by Ayala. In opposition to the motion Ayala filed its own separate statement of undisputed facts, a joint exhibit list and a 31-page opposition. HPS then filed a rebuttal separate statement of facts, a reply memorandum of points and authorities and a supplemental declaration of N. Thomas McCartney. Counsel for HPS spent 31.3 hours on the reply efforts which are reflected in the billing entries from May 21, 2020 to June 2, 2020. The time entries for May 22nd, 23rd, 25th, and the second May 26th all reflect attorney research utilizing the aforementioned LexisNexis databases and other sources. [Citation.] The balance of the time incurred, some 17.6 hours, represents the drafting of the reply memorandum and the preparation of the rebuttal statement of facts. [Citation.] [¶] . . . [¶]

"After all the papers were filed billing entries for the preparation for the hearing at the motions, attendance at the hearings, preparation of the orders and preparation of the judgment totaled $1,592.50. These entries also included work on the motion for fees, a telephone call with the client and an email to the bonding company attorney. The time for this work was 5.2 hours. [Citation.]"

On October 16, 2020, following a hearing, the court granted HPS's motion. It reasoned:

"HPS prevailed in this action by obtaining a judgment in its favor through a motion for summary judgment, so it is prevailing party.

"Pursuant to . . . Section 1717(a), in an action in a contract with an attorney fees provision, prevailing party is entitled to fees.

15.

"So the question before the Court is whether this action is on a contract with an attorney fee provision.

"Ayala filed this case against HPS and American Contractors asserting cause of action for first and third-party beneficiary serving as beneficiary under the written agreement where [C]ity agreed to pay HPS $298,331.35 of which $203,000 was to be paid to Ayala for work performed under its subcontract between HPS and Ayala.

"Second, for restitution, serving [*sic*] . . . HPS retained the benefits of [Ayala]'s work and received $249,700 which was earmarked for Ayala.

"Third, for conversion that HPS converted $249,700 that was specially earmarked for Ayala.

"Finally, against American [Contractors] on the contractor's licensing bond.

"Appears only the first through third cause of action apply to HPS. This complaint was based on the same facts and evidence as the first case, including the contract between . . . [C]ity and HPS, and although the Complaint does not say so, the subcontract between HPS and Ayala.

"The Complaint does state HPS hired Ayala and that it was a licensed subcontractor. As the prior case in the motion for summary judgment evidence established, that hiring was through a subcontract between HPS and Ayala.

"Ayala has stated in discovery responses in this case that the subcontract supports the allegation there was a third-party beneficiary contract between . . . [C]ity and HPS.

"While the Compliant [*sic*] alleges a separate written agreement of which Ayala alleges it was an intended third-party beneficiary, no such agreement has ever been provided, even in the summary judgment evidence.

"Ayala's allegations in Paragraph 9 through 14 of the Complaint established the claim was for the money at issue in accordance with third-party beneficiary contract was based on Ayala's work for which it was hired, that is work under the subcontract.

"Paragraph 16 alleges Ayala performed all covenants and conditions required to be performed as a third-party beneficiary, specifically removal

16.

of the large rocks and boulders in conformity with the written agreement between HPS and City . . . .

"However, that work was actually pursuant to the HPS[/]Ayala subcontract.

"Ayala never provided any evidence in opposition for summary judgment that, one, there was any separate agreement or, two, that any such agreement or its terms required the purported third party, Ayala, to do anything under that agreement.

"Ayala's obligations performed was only pursuant to the HPS/Ayala subcontract.  [¶] . . . [¶]

"California courts liberally construe the term 'on a contract' as used within Section 1717, as long as the action involves a contract, it is on the contract within the meaning of Section 1717. . . .

"In determining whether an action is on a contract under Section 1717 proper focus for the Court is not on the nature of the remedy, but on the basis of the cause of action.

"And whether a Complaint pleads contract cause of action is not dispositive to the application of . . . Section 1717.  Instead, the Court should look to the gravamen of the overall action.

"Here, pursuant to the subcontract in the August 28, 2009 amendment by Ayala changing reasonable to actual, . . . , subcontract [item 25] reads:

> " 'In the event any legal action or proceeding arising out of this agreement is brought by either party of this agreement, the prevailing party shall be awarded, in addition to any other relief that may be granted, the actual attorney fees, costs, including expert witness fees and expenses, incurred in the action or proceeding by the prevailing party.'

"This language is officially brought so it can cover by the claims in this action. . . .

". . .  [T]he Court finds that this action arises out of the HPS/Ayala subcontract, that the attorney fees provision applies and under which HPS was obligated to defend.

17.

"... [B]ased on the subcontract's language the amount of attorney fees and costs would be those actually incurred for HPS.

"The Court has reviewed Mr. [N. Thomas] McCartney's billing statements that were submitted and has subtracted out those portions of the bills which appear to be associated with work done for American Contractors . . . , and . . . award HPS actual attorney fees in the amount of $70,882.50."

The order granting the motion was entered on January 4, 2021.

## DISCUSSION

### I.       Legal basis for HPS's award of attorney's fees

"California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees." (*Trope v. Katz* (1995) 11 Cal.4th 274, 278 (*Trope*).) "A party may not recover attorney fees unless expressly authorized by statute or contract." (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 818.) Code of Civil Procedure section 1021 provides:

"Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."

"In other words, [Code of Civil Procedure] section 1021 permits parties to ' "contract out" of the American rule' by executing an agreement that allocates attorney fees." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751, quoting *Trope*, *supra*, 11 Cal.4th at p. 279.) "They may agree the prevailing party will be awarded all the attorney fees incurred in any litigation between them, limit the recovery of fees only to claims arising from certain transactions or events, or award them only on certain types of claims. The parties may agree to award attorney fees on claims sounding in both contract and tort." (*Brown Bark III, L.P. v. Haver*, *supra*, 219 Cal.App.4th at p. 818.)

"Although Code of Civil Procedure section 1021 gives individuals a rather broad right to 'contract out' of the American rule by executing such an agreement, these arrangements are subject to the restrictions and conditions of section 1717 in cases to which that provision applies." (*Trope*, *supra*, 11 Cal.4th at p. 279.) Section 1717, subdivision (a) provides in pertinent part:

> "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . [¶]

> "Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit."

" 'California courts construe the term "on a contract" liberally.' [Citation.] The phrase 'action on a contract' includes not only a traditional action for damages for breach of a contract containing an attorney fees clause [citation], but also any other action that 'involves' a contract under which one of the parties would be entitled to recover attorney fees if it prevails in the action [citation]." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 240.) "[W]hether a complaint pleads contract causes of action is not dispositive to the application of . . . section 1717. Instead, courts look to the gravamen of the overall action." (*Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 409.) " 'An action is more likely to be found "on a contract" for purposes of [section 1717] if the agreement is broad in scope or if the main thrust of the litigation is based on the contract.' [Citation.]" (*Ibid.*)

"[T]o determine whether an award of attorney fees is warranted under a contractual attorney fees provision, the reviewing court will examine the applicable statutes and provisions of the contract. Where extrinsic evidence has not been offered to interpret the [contract], and the facts are not in dispute, such review is conducted de novo." (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142; see *Yoon v.*

19.

*CAM IX Trust* (2021) 60 Cal.App.5th 388, 391 ["A determination of the legal basis for an award of attorney fees is a question of law we review de novo."].)

On appeal, Ayala contends:

"[The trial court's] ruling was clearly erroneous as a matter of law. The trial court was relying on a prevailing party attorney's fee clause in a contract that was <u>NOT</u> at issue in this lawsuit. . . .

"In this case, the contract alleged in the Complaint which forms the gravamen of this lawsuit is the contract between HPS and . . . City . . . . This was a lawsuit predicated on a third-party beneficiary claim.

"HPS did not establish that there was any prevailing party attorney's fee clause in the third party contract between HPS and . . . City . . . . HPS did not attach the third party contract to its motion for attorney's fees. HPS did not establish that there was any prevailing party attorney's fee clause in the operative contract at issue in this lawsuit."

We disagree that the main thrust of the litigation was not based on the subcontract between Ayala and HPS. According to Ayala's January 22, 2019 complaint, (1) HPS entered into a contract with City to serve as the prime contractor the City's Project; (2) HPS hired Ayala to perform part of the Project's underground work; (3) at one site, Ayala unexpectedly encountered large rocks and boulders that interfered with its work and notified HPS, who then informed City; (4) City decided to pay HPS $298,331.35 due to the different site conditions, $203,000 of which would go to Ayala as compensation for the extra labor; (5) Ayala completed its work; and (6) Ayala did not receive payment. In other words, the gravamen of the lawsuit was HPS's refusal to compensate Ayala for work performed pursuant to the subcontract. (Cf. *Orozco v. WPV San Jose, LLC*, *supra*, 36 Cal.App.5th at pp. 387, 409 [no "action on a contract" where lawsuit did not involve a contractual breach or violation or otherwise seek to interpret or enforce a contractual provision].) Furthermore, as pointed out by the superior court, Ayala never provided a copy of the purported third-party beneficiary contract between HPS and City. At most, undisputed facts established that City, HPS, and Ayala agreed to a change order that

20.

would pay Ayala an additional $203,000. Item 22 of the subcontract expressly states "[t]his Agreement consists of this Agreement . . . and any and all . . . change orders thereto . . . ." (See *ante*, at p. 9.)

Since the main thrust of the litigation was based on the subcontract, which contained an attorney's fees provision, HPS's award of attorney's fees was warranted.[11]

## II.     Amount of HPS's attorney's fees

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.]" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM*).) "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Ibid.*) "Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*Ibid.*)

" 'Section 1717 provides for the payment of a "reasonable" fee. After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure.' " (*PLCM*, *supra*, 22 Cal.4th at pp. 1095-1096.) " 'It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court . . . . [Citations.] The value of legal services performed in a case is a

---

[11] We necessarily reject Ayala's second contention (i.e., HPS could not recover attorney's fees with respect to the restitution and conversion claims), which is predicated on the notion that its third-party beneficiary's claim for breach of written contract was not based upon the aforementioned subcontract.

matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' [Citation.]" (*Id.* at p. 1096.)[12]

"We review the amount of attorney fees awarded for abuse of discretion." (*Dzwonkowski v. Spinella* (2011) 200 Cal.App.4th 930, 934.) "Trial judges are entrusted with this discretionary determination because they are in the best position to assess the value of the professional services rendered in their courts." (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 882.) An order awarding attorney's fees " 'is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance.' [Citation.]" (*Ibid.*) "[T]he court's fee award ' "will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' [Citation.]" (*Ibid.*) "The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134; see *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 578 ["We are required to uphold a reasonable ruling even if we might not have ruled the same way and a contrary ruling

---

[12] We acknowledge that item 25 of subcontract, as amended, provided for " 'actual attorney's fees.' " (See *ante*, at p. 9.) "[W]hile the availability of an award of contractual attorney fees is created by the contract [citation], the specific language of the contract does not necessarily govern the award. In setting contractual attorney fees, ' "[e]quitable considerations [under . . . section 1717] must prevail over . . . the technical rules of contractual construction." ' [Citation.]" (*Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 372-373; see *PLCM*, *supra*, 22 Cal.4th at p. 1096 ["Although the terms of the contract may be considered, they 'do not compel any particular award.' "].)

22.

would also be sustainable."]; see also *J.B.B. Investment Partners, Ltd. v. Fair* (2014) 232 Cal.App.4th 974, 993 ["If the court's ruling is correct on *any* legal theory, the judgment will be affirmed."].)

Here, the $70,882.50 award of attorney's fees neither shocks the conscience nor suggests any passion or prejudice. Rather, the reasonableness of the amount is borne out by the record. (Cf. *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 101 ["It is the essence of arbitrariness to make an award of attorney fees that cannot be justified by the [moving party's] request, the supporting bills, or the [opposing party's] opposition."].) N. Thomas McCartney, one of three attorneys involved in the litigation, provided a declaration under penalty of perjury (see *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 995; *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 700) as well as itemized billing invoices (see *People v. Kelly* (2020) 59 Cal.App.5th 1172, 1182-1183). Together, these documents specified the experience and expertise of counsel; the hourly rates used; the number of hours expended; the actual tasks performed (and the nature thereof), by whom they were performed, and the dates they were performed; and other underlying circumstances. (Cf. *Syers Properties III, Inc. v. Rankin*, *supra*, at p. 699 [" 'Because time records are not required under California law . . . , there is no required level of detail that counsel must achieve."].) In response to Ayala's opposition, HPS filed a reply memoranda and N. Thomas McCartney's supplemental declaration, which further delved into the charges and efforts related to the summary judgment motions. We find no reason to disturb the court's ruling.

## **DISPOSITION**

The January 4, 2021 postjudgment order is affirmed. Costs on appeal are awarded to defendant and respondent HPS Mechanical, Inc.


DETJEN, Acting P. J.

WE CONCUR:


MEEHAN, J.


DE SANTOS, J.