Filed 12/10/24

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JORGE CHAVEZ et al., <br><br> Plaintiffs and Appellants, <br> v. <br> CALIFORNIA COLLISION, LLC, et al., <br><br> Defendants and Respondents. | A167658 <br><br> (Alameda County <br> Super. Ct. Nos. RG17865765, <br> RG18895257) |

Jorge Chavez, Aldo Isas, and Samuel Zarate (collectively, plaintiffs) sued California Collision, LLC (CCL) and George Osorio (collectively, defendants) for various wage and hour and employment claims. Defendants made settlement offers to each plaintiff pursuant to Code of Civil Procedure section 998 (section 998 offers).[1] Chavez and Isas accepted. Zarate proceeded to trial—the jury found in his favor on two causes of action but awarded him damages lower than the section 998 offer amount. After trial and entry of judgment, the court awarded costs for defendants and against Zarate under section 998 as Zarate failed to obtain a more favorable judgment at trial. The court also awarded attorney fees to plaintiffs in amounts much lower than those requested.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I and III.

[1] All further undesignated statutory references are to the Code of Civil Procedure.

Numerous issues are raised on appeal. As explained below, we lack jurisdiction to entertain Zarate's challenge to two interlocutory orders (pretrial motion for summary adjudication and motion for a directed verdict) because he failed to file a notice of appeal from the final judgment entered after trial. And we find no abuse of discretion in the trial court's award of attorney fees to plaintiffs. However, we reverse the court's award of costs to defendants made pursuant to section 998 as being in violation of Labor Code sections 1194 and 218.5.

**FACTUAL AND PROCEDURAL BACKGROUND**

Osorio was the owner of CCL, an auto body repair and paint shop in Pleasanton. Plaintiffs worked at CCL at various periods of time between August 2010 and February 2017: Chavez worked at CCL from August 2013 to February 2017; Isas, from August 2010 to April 2012 and from October 2013 to January 2015; and Zarate, from March 2015 to February 2017.

*Plaintiffs' Complaints*

In July 2017, plaintiffs filed a first amended complaint against CCL raising 11 causes of action: (1) misclassification as independent contractors rather than employees; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to pay wages earned; (5) failure to give meal breaks; (6) failure to give rest breaks; (7) waiting time penalties; (8) failure to provide accurate, itemized wage statements; (9) failure to reimburse for business expenses; (10) unfair business practices under the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.); and (11) as to Chavez and Isas, violations of Labor Code section 1198.5 for failure to timely allow them to inspect or receive copies of their personnel records.

In March 2018, plaintiffs filed a separate complaint asserting the same claims against Osorio, under theories of alter ego and individual liability for

labor and wage violations as CCL's owner and agent. The cases were consolidated.

*Settlement Offers and Motion for Summary Adjudication*

Defendants made settlement offers to each plaintiff. All the settlement offers described below were made pursuant to section 998.

On July 13, 2018, defendants made offers to Chavez and Zarate. They offered Chavez $53,750 plus reasonable attorney fees and costs as of the offer date, which Chavez accepted. They offered Zarate $38,750 plus reasonable attorney fees and costs—Zarate did not respond.

In December 2018, Zarate and Isas moved for summary adjudication on seven causes of action raised in the complaints, as well as their claim that Osorio was personally liable for the alleged violations. The trial court denied the motion in its entirety.

On May 11, 2021, defendants offered Isas $75,000 plus reasonable attorney fees and costs incurred as of the offer date, which Isas accepted on June 9, 2021. Also on May 11, 2021, defendants offered Zarate $60,000 plus reasonable attorney fees and costs—Zarate did not respond and proceeded to trial.

*Jury Trial on Zarate's Claims*

In August 2022, a jury trial was held on Zarate's claims against defendants. At the close of evidence, Zarate moved for a directed verdict on seven causes of action against CCL, his claim that Osorio was personally liable for the violations, and several affirmative defenses raised by defendants. The court denied the motion without prejudice.

The jury found for Zarate on two causes of action—failure to pay overtime wages and failure to provide paid rest breaks—and awarded damages in the amount of $21,061, an amount lower than either section 998

3

offer made to Zarate. The jury found for CCL on the remaining claims, and found in favor of Osorio on all claims against him.

The trial court entered judgment[2] on September 26, 2022 (the September 2022 judgment) in favor of Zarate against CCL as to his claims for failure to pay overtime wages and failure to provide paid rest breaks in the amount of $21,061 based on the jury's verdict, plus $5,743.91 in restitution under the Unfair Competition Law based on the parties' stipulation, for a total of $26,804.91 from CCL. The court entered judgment in favor of CCL on all remaining causes of action, and in favor of Osorio against Zarate on all causes of action. It stated costs and attorney fees "shall be determined by motion and filing of a memorandum of costs." No party appealed from that judgment.

*Post-Judgment Motions for Costs and Fees*

In October 2022, defendants filed a motion to recover $73,374.60 in costs from Zarate, costs incurred after the date of their first (July 13, 2018) section 998 offer to him. They argued they were entitled to such costs based on section 998, subdivision (c)(1) as Zarate rejected their section 998 offers and was awarded less than the offer amounts at trial. They also argued that, under that statute, Zarate was not entitled to recover his own post-offer costs and attorney fees.

Zarate opposed defendants' motion for costs, arguing the section 998 offers were invalid and not made in good faith as such a cost award would be invalid pursuant to Labor Code sections 1194 and 218.5. In the court's November 2022 order, it rejected Zarate's arguments, and found post-offer costs pursuant to section 998 to be available and appropriate. As to the

---

[2] The September 2022 judgment was entitled "Amended Judgment" but was the first judgment entered after the jury trial.

4

specific amount, the court questioned certain costs and asked defendants to submit a revised memorandum of costs. Defendants filed a revised costs memorandum claiming $59,473.69.

Also in October 2022, plaintiffs filed a motion for $596,467.50 in attorney fees and $22,424.36 in costs—Chavez and Isas sought fees and costs pursuant to the section 998 offers and Zarate sought fees and costs as the prevailing party at trial on certain claims.

A hearing on both motions was scheduled for November 15, 2022. Prior to the hearing, the trial court issued a tentative ruling (1) granting in part defendants' motion for costs pursuant to section 998 and (2) continuing the hearing on plaintiff's motion for fees and costs to January 19, 2023 with further briefing to occur before that date—plaintiffs' counsel, Sherrett Odell Walker, was to submit a supplemental declaration segregating the fees between the plaintiffs, and defendants were given an opportunity to respond.

The tentative ruling was ambiguous as to whether the parties were to appear on November 15 for a hearing—on that date, defense counsel appeared, plaintiffs' counsel did not, and the court adopted the tentative ruling as its final ruling. As no transcript or settled statement was provided, it is not known by this court what transpired at the hearing.

On January 19, 2023, the court held a hearing. As no transcript or settled statement was provided, we do not know whether both motions were discussed on that date though the November 15 order clearly contemplated that plaintiffs' motion for attorney fees would be argued. The court issued orders (the January 2023 orders) later that day—the body of both orders addressed both outstanding motions, but the caption for each order corresponded to just one motion. As to defendants' motion for post-offer costs against Zarate pursuant to section 998, the court ruled in defendants' favor,

5

incorporating its findings from its November 2022 order adopting its tentative ruling. The court awarded $54,473[3] in costs, offset against the amount it had previously found was due to Zarate from CCL based on the jury award ($21,061) and restitution ($5,743.91). After offset, the court found Zarate would recover nothing from defendants, and defendants would recover the difference between their costs and the amount due to Zarate. The judgment entered based on these orders stated that amount as $33,152.[4]

In the January 2023 orders, the court also granted plaintiffs' motion for attorney fees in part. It found Walker's supplemental declaration failed to comply with its prior order and was unsatisfactory to prove the reasonable hours Walker expended. Considering Walker's "limited work" to segregate the time entries, the court awarded attorney fees only for the entries that were color coded by one or more plaintiffs during the relevant time period. The court found the reasonable hourly rate for Walker was $200.

Both orders stated: "Defendants may submit an amended judgment based on this Order."

*February 2023 Amended Judgment and Notice of Appeal*

In accordance with the January 2023 orders, defendants submitted a proposed amended judgment incorporating the court's costs and fee awards.

---

[3] It is unclear how the court reached this number. Defendants' revised memorandum of costs stated total costs were $59,473.69. However, in their brief, defendants indicate they sought only $54,473 in costs.

[4] This was an apparent miscalculation as it failed to account for the $5,743.91 in restitution due to Zarate from CCL. And even considering the missing restitution, the judgment apparently miscalculated the difference between the jury award of $21,061 and costs of $54,473, which amounts to $33,412, not $33,152.

6

On February 21, 2023, the trial court entered an amended judgment (the February 2023 amended judgment).[5] The only amendments were to add a description of the post-trial proceedings related to the parties' costs and fees motions and to incorporate the fees and costs awards set forth in the January 2023 orders. There was no other change or addition from the September 2022 judgment entered after trial.

On April 19, 2023, plaintiffs filed a notice of appeal from the February 2023 amended judgment; the notice of appeal did not identify any other orders or judgments.

## DISCUSSION

Various challenges have been raised to the trial court proceedings.

Zarate argues the trial court erred by denying his pretrial motion for summary adjudication and his motion for a directed verdict. However, we lack jurisdiction to consider Zarate's challenges to the two interlocutory rulings.

Zarate also contends the court erred when it awarded costs to defendants under section 998 due to contrary provisions in Labor Code sections 1194 and 218.5. On this point, we agree and reverse.

Finally, plaintiffs aver the court abused its discretion in its order awarding attorney fees. We find no such abuse of discretion.

## I. Zarate's Challenges to the Summary Adjudication and Directed Verdict Rulings Are Not Cognizable

We first address Zarate's challenges to the trial court's denials of his pretrial motion for summary adjudication and his motion for a directed

---

[5] As the September 2022 judgment was captioned "Amended Judgment," the February 2023 amended judgment was captioned "Second Amended Judgment."

verdict at trial.  Defendants assert, and we agree, that we lack jurisdiction to entertain those claims because Zarate failed to appeal from the September 2022 judgment entered after trial.

The timely filing of a notice of appeal is " 'an absolute prerequisite to the exercise of appellate jurisdiction.' " (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 881).  If a notice of appeal is filed late, we must dismiss the appeal.  (Cal. Rules of Court, rule 8.104(b).)

The denial of a motion for summary adjudication is an interlocutory order that may be reviewed—if at all—on appeal from a final judgment entered after a trial.  (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343; see § 906.)  A denial of a motion for a directed verdict may be reviewed—if at all—on appeal from the judgment.  (See *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 263, disapproved of on other grounds by *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204.)

Zarate does not contest that he did not file a timely notice of appeal from the September 2022 judgment entered after trial.  (See Cal. Rules of Court, rule 8.104(a).)  However, he asserts that the September 2022 judgment was *not* the final judgment in the case, as it left open costs and fees to be decided.  Instead, he contends, the February 2023 amended judgment was the "comprehensive final judgment" from which the time to file a notice of appeal began to run.

Contrary to Zarate's assertion, the September 2022 judgment was the final judgment as to the issues related to his trial (including the interlocutory rulings he seeks to challenge), and the February 2023 amended judgment (that merely added the costs and fees award) did not restart the time to file a

notice of appeal.[6] (See *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222 (*Torres*) ["It is well settled . . . that '[w]here the judgment is modified merely to add costs, attorney fees and interest, the original judgment is not substantially changed and the time to appeal it is therefore not affected.' "]; accord, *Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1163–1164.) Accordingly, we cannot entertain his challenges to the interlocutory orders, and we dismiss the appeal insofar as it purports to appeal those issues. (*Torres*, at pp. 222, 227.)

## II. The Trial Court Erred in Awarding Costs to Defendants Under Section 998

Zarate contends the trial court erred when it awarded post-offer costs of $54,473[7] to defendants based on section 998 because that general provision is displaced by the Labor Code, which precludes an award of costs to an employer in suits brought by employees for unpaid minimum wage, overtime, and other wage claims.[8] Reviewing this issue of statutory interpretation de

---

[6] Zarate's reliance on the December 2018 order dropping CCL's motion to tax costs as evidence that the September 2022 judgment was not final is misplaced. The December 2018 order stated the parties could renew their fees and costs motions "after the entry of a final judgment." That is precisely what the parties did when they filed their respective fees and costs motions after entry of the September 2022 judgment, which they apparently understood to be the "final judgment" referred to in the December 2018 order.

[7] This amount reflected defendants' costs only (subject to the discrepancy with their revised memorandum of costs previously noted). Defendants did not seek to recover attorney fees from Zarate.

[8] As a preliminary matter, we reject defendants' contention that plaintiffs failed to properly appeal the court's award of costs and fees by failing to separately appeal from the January 2023 orders or list those orders in their notice of appeal. Although the normal procedure is to file a notice of appeal from a post-judgment fees and costs order (*Torres*, *supra*, 154 Cal.App.4th at p. 222), the January 2023 orders expressly left open the

9

novo (*Cal. Advocates for Nursing Home Reform v. Aragon* (2021) 60 Cal.App.5th 500, 507), we agree.

" 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We first examine the statutory language, giving it a plain and commonsense meaning.' [Citation.] 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Cal. Advocates for Nursing Home Reform v. Aragon*, *supra*, 60 Cal.App.5th at p. 507.)

When interpreting conflicting statutes that cannot be reconciled, later enactments supersede earlier ones, and more specific provisions take precedence over more general ones. (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960 (*State Dept. of Public Health*).)

## A. Applicable Law

Section 998, on which the trial court relied to grant costs to defendants, provides that the costs allowed under section 1032 "shall be withheld or augmented as provided in this section." (§ 998, subd. (a).) It further provides that, if a section 998 offer made by a defendant "is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff

---

possibility that defendants would submit an amended judgment based on those orders—which defendants proceeded to do. Plaintiffs then filed a notice of appeal from that amended judgment. Therefore, it was "reasonably clear" plaintiffs intended to appeal from the January 2023 orders in their notice of appeal, which we construe to encompass those orders. (See *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 21–22.)

10

shall not recover his or her post[-]offer costs and shall pay the defendant's costs from the time of the offer." (§ 998, subd. (c)(1).) However, the provision of costs under sections 1032 and 998 is only applicable in the *absence* of a specific Labor Code provision governing the awards of costs.

"In the absence of a specific Labor Code provision, costs are awarded in employment dispute matters under . . . section 1032." (*Cruz v. Fusion Buffet, Inc.* (2020) 57 Cal.App.5th 221, 239 (*Cruz*).) That section awards costs as a matter of right to a prevailing party in any action or proceeding, "[e]xcept as otherwise expressly provided by statute." (§ 1032, subd. (b).)

In the case before us, there are specific Labor Code provisions pertaining to four of the causes of action Zarate raised in his complaints. Labor Code section 1194 applies to three of the causes of action–failure to pay minimum wages, failure to pay overtime wages, and unfair business practices. That provision permits a prevailing *employee* in unpaid minimum wage and overtime suits to recover costs, and makes no mention of an employer being able to recover any costs:

> "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney fees, and costs of suit." (Lab. Code, § 1194, subd. (a).)

Labor Code section 218.5, under which Zarate brought a cause of action for failure to pay wages earned, allows a prevailing employer to recover costs in suits for other unpaid wages *only if* the court finds the employee brought the action in bad faith. It provides, in relevant part:

> "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney fees and costs to the

11

prevailing party if any party to the action requests attorney fees and costs upon the initiation of the action. However, if the prevailing party in the court action is not an employee, attorney fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith." (Lab. Code, § 218.5, subd. (a).)

"Wages" under Labor Code section 218.5 are defined as straight-time wages above the minimum wage and contractually agreed-upon or bargained-for wages. (See *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1430.) It is undisputed that there was no finding of bad faith in this case.

In *Cruz, supra*, 57 Cal.App.5th 221, the court rejected the employer-defendants' argument that they were entitled to the employee-plaintiff's post-offer costs because the employee rejected their section 998 offer yet failed to obtain a more favorable judgment at trial. (*Cruz*, at pp. 240–242.) The employee in that case alleged 10 causes of action against defendants (the business and its owners) and asserted alter ego theory of liability against the owners. (*Id.* at p. 228.) The employee prevailed at trial on seven causes of action, including for nonpayment of wages, failure to pay overtime, and failure to pay meal and rest break compensation, but the court found in favor of the business on the remaining causes of action, including for conversion, and in favor of the owners on Cruz's claim of alter ego liability. (*Id.* at p. 229.) The trial court found Labor Code sections 1194 and 218.5 provided the statutory framework for fees and costs and rejected the owners' assertion that they were entitled to recover costs from the employee even though she failed to obtain a more favorable judgment against either of them at trial. (*Id.* at pp. 230–231.)

The Fourth District Court of Appeal affirmed, finding the public policy underpinning Labor Code section 1194's one-way cost shifting provision

12

(allowing only an employee to recover costs) would "not be served by allowing for a more general cost-shifting provision, such as that expressed . . . section 1032, to apply to require the shifting of costs in favor of a prevailing defendant employer." (*Cruz, supra*, 57 Cal.App.5th at pp. 242, 245.) Therefore, the court concluded that, where Labor Code section 1194 applies, it "displaces any application of . . . section 1032, subdivision (b), thereby rendering . . . section 998 also inapplicable." (*Id.* at p. 242.)

In so doing, the *Cruz* court disagreed with an earlier decision by the Fourth District Court of Appeal, *Plancich v. United Parcel Service, Inc.* (2011) 198 Cal.App.4th 308 (*Plancich*). In *Plancich*, the court concluded that Labor Code section 1194 "does not provide an 'express' exception to the general rule permitting an employer, as a prevailing party, to recover costs under . . . section 1032, subdivision (b), because [Labor Code] section 1194 makes no mention of prevailing employers." (*Plancich*, at p. 313 [citing *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 991].) Because section 1032 states a prevailing party is entitled to costs unless "otherwise *expressly* provided by statute" (§ 1032, subd. (b), italics added), the *Plancich* court, relying on the reasoning in *Murillo*, concluded the prevailing employer defendant in that case was not precluded by Labor Code section 1194 from recovering costs. (*Plancich*, at pp. 316–317.)

## B. Analysis

Zarate, like the employee in *Cruz*, alleged causes of action under Labor Code sections 1194 and 218.5, in addition to other claims, but was not awarded damages greater than the proposed settlement in either section 998 offer. Because claims were made under Labor Code sections 1194 and 218.5, those sections provide the statutory framework for the provision of costs in the entirety of the case. (See *Cruz, supra*, 57 Cal.App.5th at pp. 230, 240–

13

242.) We agree with the analysis set forth in *Cruz* and hold that, where the one-way cost shifting provisions of Labor Code sections 1194 and 218.5 apply, they serve to override the more general cost-shifting provisions of sections 998 and 1032. (*Id.* at p. 242.) As to Labor Code section 218.5, our holding is limited to instances where there is no finding of bad faith by the trial court.

Our conclusion is supported by the strong public policy interest underpinning the cost-shifting provisions in Labor Code sections 1194 and 218.5. As *Cruz* noted, in 1991, the Legislature amended Labor Code section 1194 to permit an employee to recover prejudgment interest and reasonable attorney fees, in addition to the employee's right to recover costs. (*Cruz*, *supra*, 57 Cal.App.5th at p. 242; Stats. 1991, ch. 825, § 2, p. 3666). The legislative history shows the additional remedies in the amendment were "needed as disincentives to violation of minimum wage laws," which were "especially necessary in situations where the employees themselves pursue a private action to recover unpaid wages or overtime." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 955 (1991–1992 Reg. Sess.) as amended Sept. 10, 1991, p. 2.)[9]

In 2013, the Legislature amended section 218.5 to "mak[e] the award of attorney fees and costs where the prevailing party is not an employee contingent on a finding by the court that the employee brought the court action in bad faith." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 462

---

[9] The parties did not provide the legislative history. On our own motion, we take judicial notice of the legislative history of the 1991 amendment to Labor Code section 1194 (see *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1541, fn. 9), specifically the Committee and Floor Analyses.

14

(2013–2014 Reg. Sess.) as introduced, p. 3.)[10]  The sponsor of the bill noted the prior "the two-way fee shifting provision in Labor Code Section 218.5 ha[d] a chilling effect on contractual wage claims." (*Id.* at p. 5.)  The sponsor further stated:

> " 'California is one of only three states . . . where a worker may unconditionally be liable for the employer's attorney fees in a wage claim action.  Given the realities of wage and hour litigation for a worker, this rule is unfair.  A worker may have a totally legitimate wage claim, but lack access to the records needed to prove it.  In the underground economy, where workers are often paid "off the books" and in cash, records are few and far between and proving what an employer did or did not do is nearly impossible.  Workers in those kinds of jobs should not be saddled with the employer's attorney fees simply because they were not able to prevail.' " (*Ibid.*)

We agree with *Cruz* that this policy in favor of allowing employees to bring wage suits would be undermined by permitting section 998 to require an employee to pay costs if unsuccessful. (*Cruz, supra*, 57 Cal.App.5th at p. 242.)  We note that, to the extent they conflict, the specific one-way cost and fee shifting provisions in Labor Code sections 1094 and 218.5 (absent a finding of bad faith) take precedence over the more general ones in sections 998 and 1032. (See *State Dept. of Public Health, supra*, 60 Cal.4th at p. 960.)

Additionally, the provision in section 998 at issue here—allowing a defendant to recover costs from a plaintiff that rejects the defendant's offer and fails to obtain a more favorable judgment—was added by the Legislature in 1987. (Stats. 1987, ch. 1080, § 8, p. 3655.)  As discussed above, both Labor

---

[10] On our own motion, we take judicial notice of the legislative history of the 2013 amendment to Labor Code section 218.5 (see *Gananian v. Wagstaffe, supra*, 199 Cal.App.4th at p. 1541, fn. 9), specifically the Committee and Floor Analyses.

Code sections 1094 and 218.5 were amended in 1991 and 2013, respectively, to further the policy of encouraging suits by workers for violations of wage laws. Thus, to the degree they conflict, the later enacted amendments to the Labor Code supersede the earlier enacted provision of section 998. (See *State Dept. of Public Health*, *supra*, 60 Cal.4th at p. 960.)

Defendants insist we instead follow the reasoning in *Plancich*, *supra*, 198 Cal.App.4th 308, which the trial court here relied on to grant defendants' costs motion.[11] As stated in *Cruz*, "[w]e decline to interpret [Labor Code] section 1194's silence with respect to prevailing employers as anything other than a legislative intention to provide a one-way cost and fee shifting provision," just as Labor Code section 218.5 provides (absent a finding of bad faith). (*Cruz*, *supra*, 57 Cal.App.5th at p. 242.) That legislative intent would not be served by permitting a court to award costs to a prevailing employer.

Accordingly, we conclude the trial court erred when it granted defendants' costs motion under section 998.[12] The order granting defendants' motion for costs shall be reversed.[13]

---

[11] The trial court did not distinguish or otherwise cite to *Cruz, supra*, 57 Cal.App.5th 221.

[12] We readily dispose of Zarate's argument that the section 998 offers were invalid and made in bad faith because they contained an incorrect statement of law as to whether he would be responsible for defendants' costs if he rejected the offers and failed to obtain a more favorable judgment at trial. Although we conclude Zarate is not liable for defendants' costs under section 998, there is no evidence in the record before us that defendants deliberately misled him or made the offers in bad faith.

[13] Zarate challenges the court's award of costs to defendants but does not ask for costs to be awarded to him under section 1194. He has therefore forfeited any such request, and we do not reach it here. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

16

**III. The Attorney Fees Award Was Not an Abuse of Discretion**

Plaintiffs sought attorney fees in a post-trial motion. As to Chavez and Isas, the motion sought pre-offer attorney fees under the terms of their agreements. As to Zarate, the motion sought to recover all attorney fees on the basis that he prevailed on some of his claims at trial.[14]

In determining the fee award, the trial court applied the lodestar method, which is calculated by multiplying the reasonable number of hours spent on the case by a reasonable hourly rate. (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 697 (*Syers*).) The lodestar amount can be adjusted up or down using multipliers based on various factors. (*Id.* at pp. 697–698.)

No party has an issue with the underlying methodology applied. Rather, plaintiffs contend the court abused its discretion in (1) calculating their counsel's hourly rate, (2) calculating the number of hours, and (3) failing to apply a multiplier. Reviewing the court's attorney fee determination for abuse of discretion, (*Syers*, *supra*, 226 Cal.App.4th at p. 697), we find no such abuse.

**A. Additional Relevant Facts**

Plaintiff's counsel, Walker, asked the court to find a reasonable hourly rate of $400, which he asserted was below the reasonable market value for services of similarly experienced attorneys in the same area under the "*Laffey* Matrix." Defendants argued this rate was not reasonable, noting Walker failed to provide any information regarding his experience litigating employment cases. Defendants further argued Walker's knowledge and skill

---

[14] Although plaintiffs' motion also sought costs, as well as fees for work done by plaintiffs' first counsel who represented them from May 2017 through January 2018, the trial court's decision not to award such costs or fees is not at issue in this appeal.

did not justify the hourly rate based on his lack of demonstrated trial experience, lack of professionalism, various unsuccessful pretrial motions, and issues before and during trial with depositions, subpoenas, witnesses, and lodging transcripts. They attached a declaration asserting other local attorneys with more experience than Walker charged between $350 and $400 and asked the court to set a rate of no more than $175.

Walker claimed 1,378.8 hours of work on the case, attaching dozens of pages of time entries that spanned May 2017 to October 2022 that were almost entirely unsegregated by plaintiff or claim. Plaintiffs argued the fees did not need to be separately allocated between them because they were jointly represented, they raised the same claims, and counsel performed the same work in preparing those "inextricably intertwined" claims. Walker also requested a multiplier of two to three times the lodestar amount.

In opposition, defendants noted that counsel failed to apportion fees and costs among each plaintiff according to the appropriate time frame for each. Specifically, Chavez and Isas were entitled to fees through the dates their section 998 offers were made (July 13, 2018 and May 11, 2021, respectively) and Zarate was entitled to fees only through the date his first section 998 offer was made (July 13, 2018) because he failed to obtain a more favorable judgment at trial. They also contended the court should apportion fees based on the causes of actions, noting the jury ruled for Zarate on only two out of seven causes of action brought to trial, and challenged plaintiffs' assertion that the causes of action were inextricably intertwined. Finally, they averred that numerous entries were duplicative, excessive, or unnecessary.

In its November 2022 ruling, the court directed Walker to submit a supplemental declaration segregating the fees for each plaintiff. Specifically,

18

the court ordered Walker to identify the fees incurred on behalf of Chavez and Isas through the dates of their respective section 998 offers. Walker was also directed to segregate fees for Zarate by each cause of action for which the jury found in his favor, and identify fees incurred before the date of his first section 998 offer.

Walker failed to comply with the order. He did not identify the fees incurred on behalf of the plaintiffs who settled through the dates of their respective section 998 offers. He did not segregate fees for Zarate by the two causes of action on which he prevailed. Instead, Walker filed a supplemental declaration with attached billing records containing very limited color-coded highlighting corresponding to each plaintiff. Only a small portion of the entries were highlighted in one or more colors, and the great majority remained unhighlighted. In no way did this reflect substantive compliance with the court's clear order. In his declaration, Walker stated: "Unhighlighted time entries cannot be separated into compensable and noncompensable time units because they relate to work performed that is inextricably intertwined for at least two of the co-Plaintiffs."

In its January 2023 order granting in part plaintiffs' motion for attorney fees, the court found Walker failed to comply with its prior directive to segregate fees by plaintiff and claim. It found the request for fees "suffer[ed] from a failure of proof" and failed to prove the reasonable hours expended on recoverable matters. "Among other things, Plaintiffs' counsel made no effort at all to identify the fees reasonabl[y] incurred for Mr. Zarate's Third and Sixth causes of action for which Mr. Zarate obtained some recovery—despite the Court's specific request. The Court also has concerns regarding the credibility of Plaintiffs' submissions and entries."

19

Based on Walker's "limited work" in color coding his time entries, the court awarded attorney fees only for the color-coded entries corresponding to the respective pre-offer time period for each plaintiff. Additionally, the court found the arguments raised in defendants' opposition regarding the reasonable hourly rate to be "well taken." Under "all the circumstances, including the Court's observations during trial," it found a $200 hourly rate for Walker was reasonable.

The court's order did not apply a multiplier to the attorney fee determination and was silent as to its reasoning on that topic.

Accordingly, the court awarded attorney fees as follows: 25.35 hours as to Isas, totaling $5,075; 41.5 hours as to Chavez, totaling $8,300; and 1.3 hours as to Zarate, totaling $260.

## B. Plaintiffs' Failure to Provide Transcripts or Settled Statements on Appeal

Plaintiffs have not provided transcripts or settled statements of the November 15, 2022 or the January 19, 2023 hearings.

The party challenging an attorney fee award bears the burden of providing an adequate record to assess error. (*Rhule v. WaveFront Technology, Inc.* (2017) 8 Cal.App.5th 1223, 1228 (*Rhule*).) "Without a reporter's transcript or an agreed or settled statement of the proceedings at the two pertinent trial court hearings, we do not know the basis of the trial court's reasoning in awarding fees." (*Id.* at pp. 1228–1229.)

Plaintiffs' failure to provide any transcript or settled statement showing what occurred at the hearings on the fees motion—particularly the January 19, 2023 hearing where the court found Walker failed to comply with its prior order and granted only limited attorney fees—undercuts their argument that the trial court abused its discretion in its determinations.

20

Without the transcript or settled statement, we cannot assess what occurred at the hearing that led to the court's decision (including its assessment of Walker's credibility) or whether there was any error in its reasoning, other than what is in its written ruling. And, as we discuss below, the record on appeal does not support plaintiffs' challenges to the attorney fee award. Accordingly, we conclude there was no error in the attorney fee award. (See *Rhule, supra*, 8 Cal.App.5th at pp. 1228–1229.)

### C. Hourly Rate

Plaintiffs challenge the court's determination that the reasonable hourly rate for Walker was $200, asserting his requested rate of $400 was reasonable under the *Laffey* Matrix. The *Laffey* Matrix is a billing schedule of attorney rates in the Washington, D.C. area that can be adjusted to comparable rates in other areas. (*Syers, supra*, 226 Cal.App.4th at p. 695.)

" 'The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel. [Citations.]' " (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1260.)

Here, the trial court set the $200 hourly rate for Walker based on all the circumstances, including its observations during trial, and incorporated the arguments in defendants' opposition to plaintiffs' motion for attorney fees. Those arguments included that Walker had no prior trial experience, lacked professionalism, and had issues throughout the proceedings with depositions, subpoenas, witnesses, and lodging transcripts. They also noted other attorneys with more years of experience charged between $350 and $400.

The trial judge " ' "is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).) As the best judge of the value of Walker's services rendered in its court (*ibid.*), the trial court made a reasonable determination of his hourly rate. Further, "the trial court was neither *required* to follow the *Laffey* Matrix nor to adopt the rate defense counsel opined was the 'market rate' for services of this type." (*Syers, supra*, 226 Cal.App.4th at p. 702.)

We are not convinced that a reasonable hourly rate of $200 was clearly wrong, and we therefore find no abuse of discretion by the court. (*Ketchum, supra*, 24 Cal.4th at p. 1132.)

### D. Number of Hours

Plaintiffs also challenge the determination by the trial court as to the hours Walker spent on his representation. They assert the court abused its discretion by requiring them to segregate out Walker's time entries by plaintiff and claim. We are unpersuaded.

To the extent a party may recover attorney fees for wage claims, they may do so only when they are the prevailing party. (See Lab. Code, §§ 218.5, subd. (a), 1194, subd. (a); see also *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1248 [prevailing party may recover attorney fees only when statute or agreement of parties provides for fee shifting].) A court may not award fees for legal work unrelated to a cause of action for which fees are authorized. (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 555 (*Thompson Pacific Construction, Inc.*).)

Where fees are authorized for some causes of action but not others,

allocation is a matter within the trial court's discretion. (*Thompson Pacific Construction, Inc.*, *supra*, 155 Cal.App.4th at p. 555.) Allocation is not required when the issues are " 'so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not.' " (*Ibid.*) However, a trial court may apportion fees "even where the issues are connected, related or intertwined." (*El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1365.) Also, " 'although time-keeping and billing procedures may make a requested segregation difficult, they do not, without more, make it impossible.' " (*Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1297.)

A trial court abuses its discretion when its decision " 'exceeds the bounds of reason' " or is " 'arbitrary, capricious, patently absurd, or even whimsical.' " (*Doe WHBE 3 v. Uber Technologies, Inc.* (2024) 102 Cal.App.5th 1135, 1150 (*Doe WHBE 3*).) Put another way, " '[a] ruling that constitutes an abuse of discretion has been described as one that is "so irrational or arbitrary that no reasonable person could agree with it." ' " (*Ibid.*)

Contrary to plaintiffs' assertion, the trial court did not abuse its discretion when it awarded attorney fees for only the time entries that Walker color coded in response to the court's November 2022 order. In that order, the court gave explicit instructions to Walker as to how to allocate his time: specifically, to identify the fees incurred on behalf of Chavez and Isas before their respective section 998 offers, and to segregate fees for Zarate by successful cause of action and prior to his first section 998 offer. This order was within its discretion to request given the differing time frames and issues applicable to each plaintiff. (See *Thompson Pacific Construction Inc.*, *supra*, 155 Cal.App.4th at p. 555.)

23

In response, Walker provided a color-coded highlighting of a limited portion of his time entries, and the court awarded fees for those entries. As to Walker's contention that the remaining (majority) of the entries could not be segregated, it may have been difficult, but he did not present any evidence that doing so was impossible, and he appears to have made zero effort to do so. (See *Heppler v. J.M. Peters Co.*, *supra*, 73 Cal.App.4th at p. 1297.) Instead, with few exceptions, Walker merely highlighted time entries that already contained the name of one or more plaintiff without otherwise indicating whether the remaining entries corresponded to any particular plaintiff or claim. He also apportioned entries among the plaintiffs only where the entries already divided the time by plaintiff. Further, granting Walker's fee request could have resulted in the court improperly awarding attorney fees even where Zarate was not the prevailing party—for example, in all of his claims against Osorio—or for causes of action where he was not entitled to fees. (See *Kirby v. Immoos Fire Protection, Inc.*, *supra*, 53 Cal.4th at p. 1248; *Thompson Pacific Construction Inc.*, *supra*, 155 Cal.App.4th at p. 555.)

Given the court's explicit instructions to Walker and his failure to comply, which was not satisfactorily explained beyond his bare assertion that the remaining time entries "cannot be separated" because they involved inextricably intertwined work, we cannot say the court's decision to award fees for only the color-coded entries exceeded the bounds of reason or was so irrational or arbitrary that no reasonable person could agree with it. (See *Doe WHBE 3*, *supra*, 102 Cal.App.5th at p. 1150; see also *El Escorial Owners' Assn. v. DLC Plastering, Inc.*, *supra*, 154 Cal.App.4th at p. 1365 [trial court did not abuse discretion in rejecting parties' claim that the issues were " 'so intertwined' " that court could not isolate the time spent on compensable

issues].)  Our conclusion is further supported by plaintiffs' failure to provide a transcript or settled statement of the hearing where the court reached its decision, where the court may well have explained its reasoning and credibility assessment.  (See *Rhule*, *supra*, 8 Cal.App.5th at pp. 1228–1229.) Accordingly, plaintiffs have not shown that the court abused its discretion in making its determination.  (*Doe WHBE 3*, at p. 1150.)

### E.  Lodestar Multiplier

Plaintiffs further assert a multiplier was warranted in this case based on the complexity and novelty of the case, the number of hours spent on it that required Walker to forego other employment, and the contingent nature of his representation.

"[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. [Citation.] The purpose of such adjustment is to fix a fee at the fair market value for the particular action." (*Ketchum*, *supra*, 24 Cal.4th at p. 1132.)

Here, the record on appeal is silent as to the court's reasoning for declining to apply a multiplier to the lodestar amount.  Again, plaintiffs failed to provide a transcript or settled statement of the January 19, 2023 hearing on the fee motion.  Moreover, there is nothing in the record as filed that shows the case was particularly novel or difficult or demonstrates Walker's skill in presenting the issues.  (See *Ketchum*, *supra*, 24 Cal.4th at p. 1132.)  Instead, the court credited the arguments in defendants' opposition to the fee motion, in which they described various deficiencies in Walker's

representation both before and during trial. Although Walker asserted the contingent nature of his representation and his foregoing of other work supported the multiplier (see *ibid.*), we decline to find an abuse of discretion in the absence of a record showing the trial court improperly assessed those factors when declining to apply a multiplier. (See *Rhule, supra*, 8 Cal.App.5th at pp. 1228–1229 ["We do not presume error on appeal; rather, the opposite is true: we presume that the court's fees order is correct unless plaintiff demonstrates the trial court abused its discretion."].)

Accordingly, we reject plaintiffs' challenges to the court's award of attorney fees.

### DISPOSITION

The appeal is dismissed to the extent it purports to appeal issues pertaining to the summary adjudication and directed verdict rulings. The January 19, 2023 order awarding costs to defendants is reversed. The trial court is directed to enter a new order denying defendants' motion for costs and a new judgment reinstating Zarate's total award of $26,804.91 from CCL, as set forth in the September 26, 2022 judgment. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

_____
PETROU, J.

WE CONCUR:


_____
FUJISAKI, ACTING P. J.


_____
RODRÍGUEZ, J.


A167658/*Chavez et al. v. California Collision LLC et al.*

*Chavez et al. v. California Collision LLC et al.* **(A167658)**

Trial Court:      Alameda County Superior Court

Trial Judge:      Hon. Somnath Raj Chatterjee

Attorneys:

      Sherrett Odell Walker for Plaintiffs and Appellants.

      Barranti Law Group and Kirsten Erath Barranti; Berliner Cohen and Thomas Patrick Murphy for Defendants and Respondents.